# WONG KWAI *v.* LYDIA K. DOMINIS, OTHERWISE KNOWN AS LILIUOKALANI.

## APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED MARCH 27, 1901.        DECIDED JULY 17, 1901.

### FREAR, C.J., GALBRAITH AND PERRY, JJ.

A power of attorney is not revoked by the mere giving of a similar power to another person.

An oral acceptance of a written offer may be sent through third persons who need not be formally authorized to act for the acceptor.

A letter, set forth in the opinion, is held to contain an offer and not a mere request for an offer.

### OPINION OF THE COURT BY FREAR, C.J.

This case was previously before the court on appeal from a decree dismissing the bill on demurrer. That decree was reversed. *Wong Kwai v. Dominis, ante,* 92. The case now comes up on appeal from a decree granting the relief prayed for after a hearing on the merits. The suit is one for specific performance of an alleged agreement to lease the Ahupuaa of Lumahai on the island of Kauai.

The main questions argued are whether a certain letter written by one Heleluhe to one Akana was an offer to lease the land and, if so, whether the offer was accepted, and whether the said Heleluhe and Akana were the duly authorized agents of the defendant and plaintiff respectively. The facts are in outline substantially as follows:

The plaintiff had leased the land originally for ten years and had obtained two successive renewals of ten years each and had been in possession as lessee under defendant's predecessors and herself for nearly thirty years. Heleluhe was defendant's confidential advisor for many years up to the time of his death, which occurred after the bringing of this suit. In 1891 she gave him a general power of attorney, which was recorded. On November 30, 1896, she gave Mr. J. O. Carter a general power of attorney, which also was recorded and notice of which was published in the newspapers. On December 3, 1896, Heleluhe executed as her attorney two leases in her presence. On December 5, 1896, she went to the United States, accompanied by Heleluhe, and on August 2, 1898, returned. The plaintiff paid rent to Heleluhe for a number of years and after the latter's departure paid rent to Mr. Carter. During the defendant's absence the plaintiff spoke to Mr. Carter several times about obtaining a renewal of the lease. The latter told him to wait until the defendant's return and that it would have to be left for her to sign. On August 10, 1898, the plaintiff consulted one Akana as to the best course to pursue to obtain a renewal. Akana was employed by Carter in collecting rents for the defendant and had on occasions taken care of some of her property. He had an office on his own account and advised others and drew papers for them. He told the plaintiff that Heleluhe and Carter were the only ones to see in regard to the matter and advised him to write a letter to Heleluhe, and, at his request, he drafted an application for a lease, which the plaintiff signed and took to Heleluhe on the next day. Akana and the plaintiff differ as to what was said between them in regard to the powers of Heleluhe and Carter. The former seemed to think that it was understood that the matter would have to be referred to the defendant, but the latter says Akana told him that either Heleluhe or Carter could sign. The plaintiff apparently did not know what the exact powers of Heleluhe and Carter were or whether they held written powers of attorney. He says that Heleluhe told him he had full power to act. In the letter to

Heleluhe he wrote among other things: "I ask yours and Her Majesty's kindness, to let your servant have the land."

On October 15, Akana received from Heleluhe a letter of which the following is the translation on file:

"W. C. Akana, my regards to you. The offer of $5,000 for the land of Lumahai for the year is at an end; therefore the highest offer at this date, that is, is $2,200; and if there is no other higher offer than this, then the land will belong to this person.

Therefore, because of my aloha for Wong Kwai, I therefore think you should go and tell him if he has any thought (desire) for the land, then he must give one hundred dollars ($100) over this offer, that is, $2,300 for the year, then the door is closed, no person can further bid, and if Wong Kwai should agree then the lease will be made immediately for ten years, the lease beginning on the 1st day of January A. D. 1900 and the lease shall be made on the following Monday the 17th, paying at the same time the half of the yearly rental in advance, that is, $1,150. If Wong Kwai agrees, then I will immediately draw up the document and sign it right away on the Monday morning, and acknowledge it on that day, then that trouble is at an end. You be quick; I am taking great consideration for his interest, because he was the person who has been on the land for a long time. Your true friend,

(Signed)             J. H. HELELUHE.
Washington Place, Oct. 15th, 1898."

Akana, on receiving this letter, sent for one Kan Wing Chew, who was a friend of the plaintiff and occasionally employed by him, and gave him the letter to take to the plaintiff. The plaintiff took it to another person to have it more carefully explained and then, on the same day that the letter was received, sent Kan Wing Chew back to Akana to tell him that he, the plaintiff, would take the lease at $2,300 and that he wanted to know when the lease would be ready. Akana and Kan Wing Chew then went to Heleluhe. Akana interpreted for Kan Wing Chew and told Heleluhe that the plaintiff would take the lease at $2,300 in accordance with the terms of the letter, and asked him when the plaintiff should come and Heleluhe said that he might come on Monday. On the Monday following, the

plaintiff and Kan Wing Chew went to Heleluhe and the plaintiff
asked him if he had told Akana and Kan Wing Chew that he
would have the papers ready that day and he replied that he
had and produced the papers and asked him to take them home
and see if they were right. He did so, showed them to one
Chang Kim who made an alteration and on the same day he
returned to Heleluhe with Kan Wing Chew and a notary and
with a check for the first half-year's rent. The plaintiff called
Heleluhe's attention to the alteration and the latter replied that
it was unimportant and all right, but said also that the defendant
was away and asked them to return the next day. The notary
testified that Heleluhe told him to recopy the lease with the
alteration and told the plaintiff to tell Akana to then get it, take
it to the defendant and, if she signed it, to take it back to the
notary and have him take it to the defendant and get it
acknowledged. On the next day they returned. Chang Kim
also went with them and the plaintiff this time took the half
year's rent in gold, but Heleluhe told them that some one else
had offered $2,700 for the lease, and that the defendant had
given him instructions not to sign the lease. Upon being asked
if he had a power of attorney to sign, he replied that he had and
produced it. He declined to sign and said that if they wished
further satisfaction they could see the defendant. The defend-
ant executed a revocation of Heleluhe's power of attorney on
November 19, 1898. Heleluhe died before the hearing and so
was not a witness in the case.

This is a case of unusual difficulty. The foregoing statement
of the main facts does not adequately give the impressions that
the testimony gives. The transactions in regard to which there
is most question were between Chinese and Hawaiians and not
only is there some difference of opinion among the witnesses as
to just what was said on various occasions but it is unusually
difficult to determine just what was intended or understood by
what was said.

Heleluhe's authority, in our opinion, was not revoked by the
appointment of Mr. Carter with similar powers. To constitute

a revocation of a power of attorney there must be something besides the mere appointment of another attorney to show an intention to revoke. *Hatch v. Coddington,* 95 U. S. 48; *Claflin v. Lenhein,* 66 N. Y. 301; *Ahern v. Baker,* 34 Minn. 98; *Devol v. Quimby,* 11 Allen 208; *Johnson v. Youngs,* 82 Wis. 107. Heleluhe continued as the defendant's confidential adviser after Mr. Carter's appointment. He executed two leases with her knowledge a few days after that appointment. He could not very well act in that way thereafter until nearly the time of the transaction in question because he was absent from the country during most of the intervening period. Mr. Carter's appointment was apparently made, not because of any desire to change attorneys, but in order to have an attorney who could act during Heleluhe's absence.

It was unnecessary for Akana or Kan Wing Chew to have any formal appointment under the plaintiff. Assuming that Heleluhe's letter contained an offer, an oral acceptance would be sufficient under the statute of frauds, and it would only be necessary for the plaintiff to send such an acceptance to Heleluhe in some proper way. Upon receiving the letter he at once took it to a friend and had it carefully explained and then sent the one, Kan Wing Chew, who had brought it back to the one, Akana, who had sent it, with the message that he agreed to the terms and wished to know when the lease would be ready. These two, Akana and Kan Wing Chew, immediately went to Heleluhe who wrote the letter and delivered the message to him and the latter said that the lease would be ready the following Monday. This word was taken back to the plaintiff and he went to Heleluhe at the appointed time, Monday, and found the papers prepared. If the letter was an offer, we think that the plaintiff intended to accept it and sufficiently communicated his acceptance to Heleluhe.

The question of greatest difficulty is whether the letter should be construed as containing an offer. It is contended that it was a mere friendly letter of advice contemplating at most an offer from the plaintiff. There is undoubtedly much in the

letter to support this view. But an offer need not be made in any formal way. No particular words are required. It is unnecessary for one to say: "I offer you so and so," or for the other to say: "I accept your offer." It is sufficient for one to say: "If you agree, I will do so and so," and for the other to say: "I agree." This seems to be what was done here. Heleluhe in his letter first refers to offers made by others and the word translated "give" is the same as that translated "offer," namely "haawi," which means "offer" or "give." The word "bid" (koho) also is used once. But he does not ask the plaintiff to make a mere bid or offer in the same way that others have made offers. He contemplates final action in the case of the plaintiff. If the plaintiff will give or offer $2,300, "the door is closed, no person can further bid." He then goes on to say definitely and positively just what would be done "if the plaintiff should agree." He states the particulars as to the terms of the lease and as to when and how it should be executed. "The lease will be made immediately for ten years, the lease beginning on the 1st day of January, A. D. 1900 and the lease shall be made on the following Monday the 17th. paying at the same time the half of the yearly rental in advance, that is $1,150." He continues, "If Wong Kwai agrees, then I will immediately draw up the document and sign it right away on the Monday morning and acknowledge it on that day." He expressly states that he himself will sign and acknowledge the lease. Counsel for the defendant contends that the proper translation is: "It will be signed and acknowledged," but we cannot so find. The words are: "Ina e ae ana o Wong Kwai, alaila, hana koke ae wau i ka Palapala, a kakau inoa koke no i kakahiaka Poakahi, a hooiaio no ia la." This bears particularly upon the contention that Heleluhe's idea was merely to invite an offer which should be referred to the defendant before being acted upon. Heleluhe wrote definitely as one having complete authority, stating that the plaintiff, if he agreed, should have the lease on such and such terms. The plaintiff on the same day sent back word that he agreed. Heleluhe seemed to consider the communication as

settling the matter and acted accordingly by having the papers ready the following Monday. It must be conceded that aside from the terms of the letter and the evidence as to their supposed acceptance on the same date, there is much evidence that is of a very unsatisfactory nature. The words and actions of the various persons on the several occasions were largely of an informal character and in some instances might be interpreted in several ways. It is perhaps more than usually a case in which deference should be paid to the opinion of the trial judge who had the witnesses before him. Some things, especially after the supposed offer and acceptance had taken place, seem to indicate that Heleluhe and Wong Kwai thought that the matter would have to be referred to the defendant for approval or final action and that therefore the contract was not closed. And yet these things may be explained in part at least on other theories. The letter from Heleluhe to the defendant written after the events of Monday the 17th, which contains some statements pointing in this direction was, in our opinion, rightly held inadmissible. The fact that a formal lease was contemplated did not prevent the letter and the acceptance of its terms from constituting a final binding contract, the preparing and signing of the lease being merely in execution of the contract. It is true also that the formal lease seems to contain terms differing from those set forth in the letter. The letter referred to the land of Lumahai, that is, presumably, the whole of that land. The lease excepted ten acres, the stream and certain trees. Whether similar exceptions were made in the plaintiff's former leases of this land, so that in speaking of a new lease of this land the parties would have in mind the property subject to the exceptions named in the old leases, that is, whether the "land of Lumahai" was understood by the parties under the circumstances as meaning what was described in the lease, we do not know. If not, we should regard the change as a modification of the agreement made on the 15th rather than as constituting a new agreement working an abandonment of the old or proof that the minds of the parties had not met on the 15th. Apparently no question

was raised by either party as to the change. Nor is there any-thing to indicate that either party considered that the agreement of the 15th was abandoned or replaced by a new agreement. Apparently Heleluhe and Wong Kwai came to an understanding which each fully believed would be carried out, and which undoubtedly would have been carried out but for the higher offer of $2,700. The question is whether the letter of the 15th should be regarded as an offer, for this is the only memorandum of an agreement in evidence that can be enforced against the defendant under the statute of frauds. For the law of the case on several points we refer to the former decision, *ante*, 92. On the whole we are of the opinion that sufficient cause has not been shown for reversing the decree of the Circuit Judge.

The decree appealed from is affirmed.

*Hatch & Silliman* and *C. Brown* for the plaintiff.

*Robertson & Wilder* for the defendant.