WILLIAM CHARLES NEUMANN, Plaintiff-Appellant, *v.* MARIO R. RAMIL, Insurance Commissioner, Department of Commerce and Consumer Affairs, Defendant-Appellee

NO. 10715

(CIVIL NO. 85-0663)

JULY 11, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Plaintiff William Charles Neumann (Neumann) appeals from the circuit court's order dismissing his complaint for mandatory injunctive relief. The dispositive issue on appeal is whether the Joint Underwriting Plan (JUP) of the Hawaii no-fault insurance law, Hawaii Revised Statutes (HRS) Chapter 294 (No-Fault Law), requires the assignment of Neumann's claim for accidental harm against an alleged "unidentified hit-and-run motorist" to an automobile liability insurance company, where Hawaiian Insurance and Guaranty Company, Ltd. (HIG), the insurer of the car in which Neumann was the passenger, had paid to Neumann "no-fault benefits" totaling $15,000 and mandatory public liability policy coverage for accidental harm of $25,000. We answer no and affirm.

I.

The pleadings reveal the following facts. On September 27, 1981, while a passenger in a car owned and operated by Curtis W. Jenkins (Jenkins), Neumann sustained injuries when the car went off the right edge of a roadway and overturned. Neumann claims that the accident occurred when Jenkins had "to swerve to avoid an oncoming vehicle." Record at 86. He refers to the driver of that vehicle as "an unidentified hit-and-run motorist." Record at 3.

Jenkins' car was insured by HIG. Neumann made a demand upon

HIG for the combined policy limits of both the public liability and uninsured motorist coverages under Jenkins' policy. HIG paid Neumann $25,000, the policy limit under the liability coverage, in addition to $15,000, the aggregate limit of no-fault benefits, but denied Neumann's demand for payment under the uninsured motorist coverage. According to HIG's counsel, under the terms of Jenkins' policy "there cannot be a double recovery under both the uninsured motorist provisions and the bodily injury liability provisions."[1] Record at 70-71.

On March 15, 1983, Neumann requested defendant Mario R. Ramil, State Insurance Commissioner (Commissioner), to assign Neumann's claim against the unidentified "hit-and-run" motorist to a designated insurance carrier under the provisions of the JUP, HRS §§ 294-20, *et seq.* The Commissioner denied Neumann's request.

On February 15, 1985, Neumann filed a complaint seeking mandatory injunctive relief or, in the alternative, a writ of mandamus against the Commissioner.[2]

On March 13, 1985, the Commissioner moved to dismiss the complaint on the ground that it failed to state a claim upon which relief can be granted. Rule 12(b)(6), Hawaii Rules of Civil Procedure (1981). On May 13, 1985, the circuit court granted the Commissioner's motion, and Neumann appealed.

II.

Neumann argues that (1) in addition to his claims for no-fault benefits and for bodily injuries under the public liability coverage

---

[1] The Hawaiian Insurance and Guaranty Company, Ltd. (HIG) automobile insurance policy covering Curtis W. Jenkins' car is not included in the record of the case.

[2] The complaint designates "MARIO R. RAMIL, INSURANCE COMMISSIONER, DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS" as "Defendants." However, the allegations and remedies sought are directed to Mario R. Ramil, Insurance Commissioner (Commissioner) only and not to the Department of Commerce and Consumer Affairs (DCCA). The Commissioner is in charge of the Insurance Division, a part of the DCCA. Hawaii Revised Statutes (HRS) § 431-31 (1985). We believe the use of the DCCA in the caption was descriptive of the Commissioner, and this opinion treats the Commissioner as the sole defendant in the case.

Prior to the filing of the complaint against the Commissioner, plaintiff William Charles Neumann (Neumann) filed a petition for a writ of mandamus against the Commissioner in the supreme court on November 30, 1984. However, on December 6, 1984, the supreme court declined to entertain the petition and dismissed the same.

against HIG, he has a claim of $25,000 for his injuries against the insurer of the other car involved in the accident; (2) because an unidentified "hit-and-run" motorist was involved, the insurer of that car cannot be identified; and (3) therefore, under the JUP his claim should be assigned to a designated insurance carrier. On the other hand, the Commissioner contends that based on the facts alleged in the complaint, the assignment requested by Neumann is impermissible. We agree with the Commissioner.

### A.

The No-Fault Law "is bottomed on the compulsory coverage of all motor vehicles and operators under no-fault insurance policies and the partial abolition of tort liability." *Barcena v. Hawaiian Insurance & Guaranty Co., Ltd.,* 67 Haw. 97, 102, 678 P.2d 1082, 1086 (1984). It requires the compulsory no-fault policy to include (1) coverage providing for no-fault benefits and (2) liability coverages for (a) personal injuries and (b) property damages. HRS § 294-10.[3]

Because of its declared purpose of providing "insurance coverage for all who require it, at a cost within the reach of every licensed driver[,]" the legislature was concerned about the "high-risk driver, . . . the licensed driver while on welfare, . . . the grossly surcharged physically handicapped driver, . . . the driver previously convicted of a serious traffic offense and who has been licensed again[.]" Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219, 1221; Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635, 637. Because of the need to "[p]rovide for a speedy, adequate and equitable reparation for those injured or otherwise victimized[,]" the legislature was concerned about "a person with a legitimate claim [who] had no insurance company to turn to[.]" *Id.* The legislature resolved those concerns by establishing the Assigned Risks and Claims Plan (ARCP) as part of the No-Fault Law. Act 203, § 1, 1973 Haw. Sess. Laws 381, 393-97.

---

[3]At the time of Neumann's injuries on September 27, 1981, the no-fault benefits were subject to an aggregate limit of $15,000, HRS § 294-2(10), and the minimum liability coverages required were $25,000 for personal injuries per person per accident and $10,000 for property damages per accident.

Effective January 1, 1986, the minimum liability coverage for personal injuries was raised to $35,000. Act 181, § 3, 1985 Haw. Sess. Laws 309, 310-11.

In 1974, however, the legislature repealed the ARCP and created the JUP. All insurers licensed "to write and engage in writing automobile insurance" in Hawaii are members of the JUP. HRS § 294-20. Licensed drivers who fall within the classifications set forth in HRS § 294-22, such as "assigned risk drivers," public assistance drivers, and physically handicapped drivers, may apply for basic no-fault coverages and optional additional insurance.[4] The premium rates under the JUP are set by the Commissioner after consultation with the board of governors. HRS § 294-24. The JUP also provides for the assignment of claims of persons suffering accidental harm who have no insurance company to turn to for redress. HRS § 294-23. The JUP Bureau (Bureau) established by the Commissioner assigns the applications for no-fault coverages and claims for no-fault benefits and claims pursuant to mandatory public liability policies under the JUP to the insurers it designates. HRS § 294-20(b).

### B.

Neumann asserts the Bureau must assign his claim for personal injuries against the unidentified "hit and run" motorist to a designated insurer under HRS § 294-23(a) which reads:

> (a) Each person sustaining accidental harm, or the person's legal representative, may, except as provided in subsection (b)[5] of this section, obtain the no-fault benefits through the plan whenever:

---

[4]A public assistance driver pays no premium for the no-fault policy, HRS § 294-24(b)(1) (1985), and is not entitled to optional additional insurance. HRS § 294-22(b)(3) (1985).

[5]HRS § 294-23(b) sets forth the circumstances when a person would be disqualified from receiving benefits. At the time of Neumann's injury, HRS § 294-23(b) read:

(b) A person, or his legal representative, shall be disqualified from receiving benefits through the plan, if:

(1) Such person is disqualified for criminal conduct under section 294-5(c) from receiving the no-fault benefits, or

(2) Such person was:

(A) The owner or registrant of an uninsured or insured motor vehicle at the time of its involvement in the accident out of which such person's accidental harm arose, or

(B) The operator or any passenger of such a vehicle at such time with reason to believe that such vehicle was an uninsured motor vehicle.

(1) No insurance benefits under no-fault policies are applicable to the accidental harm; or

(2) No such insurance benefits applicable to the accidental harm can be identified; or

(3) The only identifiable insurance benefits under no-fault policies applicable to the accidental harm will not be paid in full because of financial inability of one or more self-insurers or insurers to fulfill their obligations.

(Footnote added.) He argues that his claim for accidental harm against the "hit and run" motorist qualifies under HRS § 294-23(a)(2) because the motorist is unidentified and, consequently, the applicable insurance benefits cannot be identified.

Neumann misreads HRS § 294-23(a). That section refers to claims for "no-fault benefits" only and not to claims based on mandatory public liability policies for accidental harm or property damage. As used in HRS § 294-23(a), the words "no-fault benefits" are words of art as defined in HRS § 294-2(10) and the benefits are subject to an aggregate limit of $15,000 per person.[6]

The use of the words "accidental harm" in HRS § 294-23(a) supports our restrictive construction. The No-Fault Law defines "accidental

---

[6]At the time of Neumann's injury, HRS § 294-2(10) read in pertinent part as follows:

(10) "No-fault benefits" with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor and means:

(A) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, x-ray and may include any non-medical remedial care and treatment rendered in accordance with the teachings, faith or belief of any group which depends for healing upon spiritual means through prayer;

(B) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation;

(C) Monthly earnings loss measured by an amount equal to the lesser of:

(i) $800 per month, or

(ii) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful employment.

(D) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to, (i) expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of himself or his family up to $800 per month, (ii) funeral expenses not to exceed $1,500, and (iii) attorney's fees and costs to the extent provided in section 294-30(a)[.]

harm" to mean "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person." HRS § 294-2(1). The broad construction urged on us by Neumann would require HRS § 294-23(a) to include a person sustaining "property damage" as well as "accidental harm."

Here, Neumann received "no-fault benefits" totaling $15,000 from HIG, Jenkins' insurer. Thus, "no-fault benefits" under Jenkins' no-fault policy were applicable and such benefits applicable to Neumann's accidental harm could be identified. Based on the facts alleged, Neumann was not eligible for benefits under HRS § 294-23(a).

## C.

Neumann contends in the alternative, however, that his claim qualifies for assignment under HRS § 294-23(c) which reads in pertinent part as follows:

(c) Any person eligible for benefits under this section, or who becomes eligible to file a claim or an action against the mandatory public liability or property damage policies, shall, upon the bureau's determination of such eligibility, be entitled to:

(1) The full no-fault benefits as if such victim had been covered as an insured at the time of the accident producing the accidental harm.

(2) The rights of claim and action against the insurer, assigned under section 294-20(b), with reference to the mandatory public liability policy for accidental harm, and with reference to the mandatory property damage policy for property damage sustained.

We perceive Neumann's argument to be that since the disjunctive "or" is used in the statute, even if he is not eligible under HRS § 294-23(a), he qualifies under HRS § 294-23(c) because he is "eligible to file a claim against the mandatory public liability" policy. He states that his claim, in this case, is against the policy of the insurer to be assigned since an unidentified "hit and run" motorist was involved. We disagree.

The divergent construction of HRS § 294-23(c) by the parties indicates and we conclude that the statutory language is ambiguous. Consequently, we will apply the rules of statutory construction in interpreting that section.

Where the statutory language is ambiguous, a court's "primary

objective is to ascertain and give effect to legislative intention." *Puchert v. Agsalud*, 67 Haw. 25, 34, 677 P.2d 449, 456 (1984); *see also Lussier v. Mau-Van Development, Inc. II*, 4 Haw. App. 421, 667 P.2d 830 (1983). "The statutory language of a subsection should not be read in isolation[,] . . . [it] must . . . be read in the context of the section as a whole and construed consistently with its scheme and purpose." *State v. O'Brien*, 5 Haw. App. 491, ___, 704 P.2d 905, 909-10, *aff'd*, 68 Haw. ___, 704 P.2d 883 (1985) (citations omitted). A court "may resort to legislative history in construing a statute." *Rana v. Bishop Insurance of Hawaii, Inc.*, 6 Haw. App. ___, ___, 713 P.2d 1363, 1367, *aff'd*, 68 Haw. ___, 713 P.2d 1363 (1985); *see also State v. Ui*, 66 Haw. 366, 663 P.2d 630 (1983); *Armbruster v. Nip*, 5 Haw. App. 37, 677 P.2d 477 (1984).

As indicated above, when the No-Fault Law was enacted in 1973, the ARCP was established to provide a remedy for "a person with a legitimate claim [who] had no insurance company to turn to, because the vehicle was uninsured, unidentified, or because the insurance company was insolvent[.]" Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219, 1221; Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635, 637. When the ARCP was replaced by the JUP in 1974, the legislative concern was for the "victims for whom no [no-fault] policy is applicable, such as the hit-skip victim." Hse. Conf. Comm. Rep. No. 28, in 1974 House Journal, at 864, 866; Sen. Conf. Comm. Rep. No. 28-74, in 1974 Senate Journal, at 776, 779. To indicate the limited applicability of claim assignments under the JUP, the report stated "[t]he number of such claims should be quite limited since the hit-skip victim who is a member of a family with a no-fault policy would be covered under it." *Id.* When HRS § 294-23(b) was amended in 1978, the legislative intent in establishing the assigned claims program was stated to be "to serve as an avenue of last resort for those innocent injured victims who have no appropriate no-fault policies available, such as the hit-skip victim who may not own a car." Sen. Stand. Comm. Rep. No. 340-78, in 1978 Senate Journal, at 911. *See also* Hse. Stand. Comm. Rep. No. 864-78, in 1978 House Journal, at 1799, 1800.

In light of such legislative intent, we construe HRS § 294-23 as setting up the following scheme of assigned claims. Subsection (a) establishes the eligibility requirements for "no-fault benefits"—a person must sustain "accidental harm" and must not be covered by a "no-fault policy." For example, an uninsured pedestrian injured by an unidentified hit-skip vehicle meets the eligibility requirements. Subsection (b)

provides that such person must be "innocent" and not disqualified thereunder.[7] Subsection (c) provides that, (1) a person eligible under subsection (a) is entitled to full "no-fault benefits"; (2) such person who meets a HRS § 294-6(a) threshold requirement[8] then becomes eligible "to file a claim or an action against the mandatory public liability" policy; and (3) such person who suffers property damage then becomes eligible to "file a claim or an action against the mandatory . . . property damage" policy. Eligibility under subsection (c) is initially determined by the Bureau.

We are aware of the disjunctive "or" rather than the conjunctive "and" in subsection (c) and our construction of that section requires the substitution of the word "and" for the word "or." The rule of construction stated in HRS § 1-18 (1976)[9] permits the substitution. *See Wee v. Board of Accountancy,* 51 Haw. 80, 84, 452 P.2d 94, 97 (1969). "The sense of a word which harmonizes best with the whole context of the statute and promotes in the fullest manner the apparent policy and objects of the legislature must be adopted." *In re City & County of Honolulu Corporation Counsel,* 54 Haw. 356, 374, 507 P.2d 169, 178 (1973).

Here, Neumann was ineligible for "no-fault benefits" under HRS § 294-23(a). Consequently, although he met the threshold require-

---

[7] *See* note 5, *supra.*

[8] Under HRS § 294-6(a), the threshold requirement is met under the following circumstances:

   1. Where death occurs, or the injury consists "in a significant permanent loss of use of a part or function of the body[,]" or the injury consists "of a permanent and serious disfigurement";

   2. Where the medical-rehabilitative expenses exceed the limit established in HRS § 294-10(b); or

   3. Where the aggregate limit of no-fault benefits under HRS § 294-2(10) is exhausted.

[9] HRS § 1-18 reads:

"Or." "and." Each of the terms "or" and "and." has the meaning of the other or both.

ment,[10] he was not entitled to an assigned claim to proceed against the mandatory public liability policy under HRS § 294-23(c).

### III.

Since Neumann's complaint failed to state a claim under HRS § 294-23, the circuit court properly granted the Commissioner's motion to dismiss.

Affirmed.

*Sharon On Leng* (*Melvin Y. Agena* with her on the brief; *Turk & Agena, Attorneys at Law, A Law Corporation,* of counsel) for plaintiff-appellant.

*Clifford K. Higa,* Deputy Attorney General, for defendant-appellee.

---

[10]The complaint contains no allegation that Neumann exhausted the aggregate limit of $15,000 of no-fault benefits and met the threshold requirement. However, Neumann alleges the receipt of $25,000 from HIG under Jenkins' public liability policy thereby implying that the threshold requirement had been met. The fact that HIG paid Neumann $15,000 in no-fault benefits appears in the papers attached to the Commissioner's motion to dismiss.