145 P.3d 727

**Shilo WILLIS, Plaintiff–Appellant,**

**v.**

**Craig SWAIN and First Insurance Company of Hawaii, Ltd., Defendants–Appellees,**

**and**

**Doe Defendants 1–100, Defendants.**

**No. 25992.**

Supreme Court of Hawaiʻi.

Oct. 26, 2006.

Bradford F.K. Bliss, Honolulu, of Lyons, Brandt, Cook & Hiramatsu, on the briefs, for the defendant-appellee First Insurance Company of Hawaii, Ltd.

Fernando L. Cosio, on the briefs, for the plaintiff-appellant Shilo Willis.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant Shilo Willis appeals from the July 24, 2003 judgment of the circuit court, the Honorable Eden Elizabeth Hifo presiding, (1) ruling in favor of Willis and against the defendant-appellee Craig Swain in immaterial part and (2) dismissing all other claims.

On appeal, Willis contends that the circuit court erred in granting summary judgment in favor of the defendant-appellee First Insurance Company of Hawaii, Ltd. (First Insurance) inasmuch as she was entitled to assigned claims coverage pursuant to Hawaii's Motor Vehicle Insurance Law, Hawai'i

Revised Statutes (HRS) ch. 431, art. 10C (1993 & Supp.1998), *see infra* note 2.

For the reasons discussed *infra* in section III.B, we vacate the circuit court's July 24, 2003 judgment and remand for further proceedings consistent with this opinion.

## I. *BACKGROUND*

On July 1 or 2, 1998, Willis received from the Department of Human Services (DHS) a "certificate of eligibility for ... motor vehicle insurance through the Hawai['] Joint Underwriting Plan [ (JUP) ] Bureau [ (JUPB) ]." (Capitalization altered.) The certificate identified Willis as a recipient of an unspecified type of "public assistance [1] as of [May 12, 1992] consisting of direct ca[sh] payments." Willis was therefore "eligible for basic motor vehicle insurance coverage at no cost, in accordance with [HRS §] 431:10C–407(b)(2[) ]." [2] Willis enrolled in a "certificate

---

1. *See* Hawai'i Administrative Rules (HAR) § 17–654–3 (1994) ("[I]n order to receive Hawai['] no-fault auto insurance at no cost: (1) An individual shall be a recipient of financial assistance payments or supplemental security income benefits[.]").

2. The Hawai'i Motor Vehicle Insurance Law, HRS ch. 431, art. 10C (Supp.1998), provided in relevant part:

 . . . .
 § [ ]431:10C–102 **Purpose.**
 (a) The purpose of this article is to:
 (1) Create a system of reparations for accidental harm and loss arising from motor vehicle accidents[.]
 . . . .
 (b) To effectuate this system of motor vehicle insurance and to encourage participation by all drivers in the motor vehicle insurance system:
 . . . .
 (2) Those persons truly economically unable to afford insurance are provided for under the public assistance provisions of this article.
 . . . .
 § [ ]431:10C–103.5 **Personal injury protection [ (PIP) ] benefits; defined; limits.**
 (a) [PIP] benefits, with respect to any accidental harm, means all appropriate and reasonable treatment and expenses necessarily incurred as a result of the accidental harm and which are substantially comparable to the requirements for prepaid health care plans....
 (b) [PIP] benefits, when applied to a motor·vehicle insurance policy issued at no cost under [HRS §] 431:10C–410(3)(A) [ (disallowing premiums "[f]or the licensed public assistance driver, as defined in [HRS §] 431:10C–

 407(b)(2)(A)") ],shall not include benefits under subsection (a) for any person receiving public assistance benefits.
 . . . .
 § [ ]431:10C–301 **Required motor vehicle policy coverage.**
 (a) An insurance policy covering a motor vehicle shall provide:
 (1) Coverage specified in [HRS §] 431:10C–304 [ ("Obligation to pay PIP benefits").]
 . . . .
 (b) A motor vehicle insurance policy shall include:
 . . . .
 (4) Coverage for loss resulting from bodily injury [ (BI) ] ... suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles. An insurer may offer the underinsured motorist [ (UIM) ] coverage required by this paragraph in the same manner as uninsured motorist [ (UM) ] coverage; provided that the offer of both shall:
 . . . .
 (C) Provide for written rejection of the coverage
 . . . .
 . . . .
 (d) An insurer shall offer the insured the opportunity to purchase [UM] coverage.... These offers are to be made when a motor vehicle insurance policy is first applied for or issued....
 (e) If [UM] coverage ... is rejected, pursuant to [subsection ](b):
 (1) The offers required by [subsection ](d) are not required to be made;
 . . . .

policy" administered by First Insurance,[3] which was effective from July 2, 1998

....

(3) The written rejections required by [subsection ](b) shall be presumptive evidence of the insured's decision to reject the options.

....

**§ [ ]431:10C–403 [JUPB]'s duties.** The [JUPB] shall promptly assign each claim and application, and notify the claimant or applicant of the identity and address of the assignee of the claim or application.... The assignee, thereafter, has rights and obligations ..., in the case of financial inability of a motor vehicle insurer ... to perform its obligations, as if the assignee had written the applicable motor vehicle insurance policy ... or lawfully obligated itself to pay motor vehicle insurance benefits.

....

**§ [ ]431:10C–407 Classifications.**

....

(b) ...

....

(2) The [JUP] shall provide [PIP] benefits ..., at the option of the owners, for ...:

(A) All licensed drivers ... who are receiving public assistance benefits consisting of direct cash payments ...; provided that the licensed drivers ... are the sole registered owners of the motor vehicles to be insured ... [.]

....

Each category of driver/owner under subparagraph[ ](A) ... may secure motor vehicle insurance coverage through the [JUP] at the individual's option.... Any person becoming eligible for [JUP] coverage under subparagraph (A) shall first exhaust all paid coverage under any motor vehicle insurance policy then in force before becoming eligible for [JUP] coverage.

....

A certificate shall be issued by [DHS] indicating that the person is a bona fide public assistance recipient as defined in subparagraph (A). The certificate shall be deemed a policy for the purposes of [the Insurance Code, HRS ch. 431] ...; and

(3) Under the [JUP], the required motor vehicle policy coverages as provided in [HRS § ] 431:10C–301 shall be offered by every insurer to each eligible applicant assigned by the [JUPB]. In addition, [UM] ... coverage[ ] shall be offered in conformance with [HRS § ] 431:10C–301 ... for each class except that defined in paragraph (2)(A)....

....

**§ [ ]431:10C–408 Assigned claims.**

(a) Each person sustaining accidental harm ... may, except as provided in subsection (b), obtain the motor vehicle insurance benefits through the [JUPB] whenever:

(1) No insurance benefits under motor vehicle insurance policies are applicable to the accidental harm; [or]

(2) No such insurance benefits applicable to the accidental harm can be identified[.]

....

....

(c) Any person eligible for benefits under [HRS ch. 431, art. 10C, pt. IV ("[JUP]") ], and who becomes eligible to file a claim or an action against the mandatory [BI] liability ... polic[y], shall, upon the [JUPB]'s determination of eligibility, be entitled to:

(1) The full [PIP] benefits as if the victim had been covered as an insured at the time of the accident producing the accidental harm; and

(2) The rights of claim and action against the insurer, assigned under [HRS §] 431:10C–403, with reference to the mandatory [BI] liability policy for accidental harm....

Any claims of an eligible assigned claimant against ... [the] mandatory [BI] liability ... polic[y] ... shall be filed with the insurer assigned and shall be subject to all applicable conditions and provisions of [HRS ch. 431, art. 10C, pt. IV ("[JUP]"), subpts. A ("Participation and Administration") and B ("Coverages and Assignment of Claims") ]....

....

**§ [ ]431:10C–410 Schedules.**

....

(3) ... (A) For the licensed public assistance driver, as defined in [HRS §] 431:10C–407(b)(2)(A), no premium shall be assessed for the mandatory minimum [PIP] ... coverage[ ]; and all policies shall conform to [HRS §] 431:10C–407(b)(2)[.]

....

Effective July 2, 1999, April 27, 2000, and May 5, 2004, the legislature amended HRS § 431:10C–103.5(a) in immaterial respects. *See* 2004 Haw. Sess. L. Act 56, §§ 1 and 4 at 285–86; 2000 Haw. Sess. L. Act 65, §§ 1 and 3 at 122; 1999 Haw. Sess. L. Act 222, §§ 4 and 6 at 707. Effective June 28, 1999, January 1, 2002, and July 1, 2006, the legislature amended HRS § 431:10C–407(b) in immaterial respects. *See* 2006 Haw. Sess. L. Act 289, §§ 4 and 7 at 1171, 1173; 2001 Haw. Sess. L. Act 157, §§ 32 and 39 at 402, 404; 1999 Haw. Sess. L. Act 142, §§ 3 and 5 at 459. Effective April 19, 2001, the legislature amended HRS § 431:10C–408(a) to (c) to provide for assigned claim benefits where "(a) ... (1) [n]o *liability or* [UM] insurance benefits ... are applicable" (new language underscored) and in other immaterial respects. *See* 2001 Haw. Sess. L. Act 14 at 16–17.

**3.** HAR §§ 16–23–68(a) ("Each insurer shall be a member of the JUP. As a condition of licensure it shall: ... (2) Accept appointment as a servicing carrier if the commissioner finds it necessary in the public interest and that the insurer is capable of performing as a servicing carrier."), –73(a) and (b) (1999) (concerning procedure for obtaining a certificate policy). HAR § 16–23–73(a) provides in relevant part:

[DHS] shall provide a certificate of eligibility for JUP coverage to eligible licensed drivers

through July 2, 1999. Willis's certificate policy did not include uninsured motorist (UM) coverage, but her certificate of eligibility stated: "If you desire ... [UM] ... coverage ] ..., contact an insurance agent to assist you in obtaining th[is] coverage upon payment of the appropriate premium." The record on appeal is silent as to whether Willis actually contacted First Insurance or any other insurer regarding UM coverage.

On February 10, 1999, Willis was a passenger in an uninsured vehicle owned and operated by Swain when Swain rear-ended another vehicle, injuring Willis.[4] Even after her certificate policy expired on July 2, 1999, Willis "continued to see [her] doctor[ ] for the injuries [that she] sustained in the ... collision" and "to incur medical bills ... relat[ing to] and ar[ising] out of the ... collision."[5] At some point after the accident, Willis filed an "application for benefits under the Hawai[']i Assigned Claims Plan,"[6] which the

JUPB assigned to First Insurance on August 11, 1999.

On December 28, 1999, First Insurance informed Willis that it would grant her no benefits pursuant to the assigned claim because, First Insurance maintained, she was covered under her certificate policy on the date of the collision. (Citing HRS § 431:10C–408.) Accordingly, on February 9, 2001, Willis filed a complaint in the circuit court of the first circuit, the Honorable Eden Elizabeth Hifo presiding, praying, *inter alia,* for damages from First Insurance for "breach of contract," "bad faith refusal to pay liability coverage," "misrepresentation," and "unfair and deceptive acts or practices." (Capitalization omitted.) On March 31, 2003, First Insurance moved for summary judgment. In its memorandum in support, First Insurance argued that

> [t]he Certificate Policy issued to [Willis] explicitly states that [UM] coverage is available to certificate policyholders by

... who are receiving public assistance benefits from [DHS] or from the Supplemental Security Income program under the Social Security Administration and who desire basic motor vehicle insurance policy coverage under [the] JUP; provided such licensed drivers ... are the sole registered owners of motor vehicles to be insured under the JUP. The applicant shall submit the certificate ... to the servicing carrier of the applicant's choice for a motor vehicle insurance policy. Certificates received by the servicing carrier within thirty days from the date of certification ... shall be accepted and treated as if [they] were payment in full for the requested motor vehicle insurance coverages. The servicing carrier shall certify this certificate which will function as a motor vehicle insurance policy.... *Only basic motor vehicle insurance policy coverages,* as defined in [HAR §§] 16–23–4[(a) (*PIP and liability (for BI, death, and property damage)*), –5 (*PIP*), and –9 (*liability and, "[f]or named insureds who prior to January 1, 1998, elected to purchase [UM] and/or [UIM] coverages," default levels of UM and UIM insurance*). (1999)], shall be bound....
(Emphases added.)

4. It is undisputed that, until the accident, Willis believed Swain's vehicle to be insured.

5. Nevertheless, in her response to First Insurance's request for admissions, Willis "admit[ted] that medical treatment that [she] received as a result of [her] involvement in the subject accident was paid for by the [DHS]." The record on appeal is silent as to *how much* of the cost was borne by DHS. Consequently, the circuit court,

on remand, must undertake further fact-finding. *See infra* section IV.

6. Willis's certificate policy would have been governed by HRS § 431:10C–407, whereas her later "assigned claim" sought "last resort" coverage under HRS § 431:10C–408. A concise clarification of the JUP's two distinct functions is provided by HAR § 16–23–67 (1999):

> (a) The [JUP] is intended to provide motor vehicle insurance and optional additional insurance in a convenient and expeditious manner for ... persons who otherwise are in good faith entitled to, but unable to obtain, motor vehicle insurance and optional additional insurance through ordinary methods. Insurers will pool their losses and bona fide expenses under [the] JUP to prevent the imposition of any inordinate burden on any particular insurer.
>
> (b) Another part of the JUP consists of the assignment thereto of claims of victims for whom no policy is applicable, such as the hit-and-run victim who is not covered by a motor vehicle insurance policy. The losses and expenses under the assigned claims program are pro-rated among and shared by all motor vehicle insurers and self-insurers.

*See also* HAR §§ 16–23–70 (1999) ("All costs incurred in the operation of the [JUPB] and the operation of the [JUP] ... shall be allocated fairly and equitably among the JUP members."), –85 ("The commissioner shall annually prorate among ... all insurers ... all costs and claims paid under the assigned claims program.").

contacting an insurance agent and paying the "appropriate premium." [Willis] did not elect to purchase [UM] coverage during the time that she was a First Insurance certificate policyholder. The current claim by [Willis] . . . is nothing less than a deliberate attempt to obtain free [UM coverage] when [Willis] elected not to purchase such coverage.

Willis responded:

If the legislature had intended to exclude the bodily injury [ (BI) ] coverage in the assigned claims policy, it would have done so just like it did under [HRS §] 431:10[C]–103.5 where it specifically excluded a person from receiving [personal injury protection (]PIP[) ] benefits in a certificate policy. . . . [T]he key element that the legislature intended was that people should have coverage, and for that reason they specifically stated in the statute that it had to be liability coverage in 2001.[7] In 1999, . . . it used the word "benefits[";] it did not exclude even in 1999 the [BI]. The whole purpose . . . of the no-fault law is remedial in nature and in purpose.

. . . .

. . . [T]he purpose of the assigned claims . . . was to provide the indigent the opportunity to have coverage. And, in essence, to say that a person who has a certificate policy is not entitled to the assigned claims policy would be, in effect, punishing an individual for having had the certificate policy issued. . . .

. . . [HRS §] 431:10[C]–301 . . . very clearly says a motor vehicle insurance policy shall include liability coverage. . . . So . . . the intent of the legislature was to afford the indigent the opportunity to have liability coverage, and that is why . . . in 2001 they made the specific qualification in [HRS § 431:10C–408(a)(1) ], which tells us specifically that if there is ["[n]]o liability or [UM] insurance benefits,["] . . . the as-

signed claim policy is applicable. [*See supra* note 7.]

The circuit court granted First Insurance's motion and, on July 24, 2003, entered final judgment in favor of First Insurance and against Willis.[8] Seven minutes later, Willis filed her notice of appeal to this court.

## II. STANDARD OF REVIEW

 We review the circuit court's grant or denial of summary judgment *de novo. Hawai'i C[m]ty[.] Fed[.] Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Querubin v. Thronas,* 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting *Durette v. Aloha Plastic Recycling, Inc.,* 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004) (quoting *Simmons v. Puu,* 105 Hawai'i 112, 117–18, 94 P.3d 667, 672–73 (2004) (quoting *Kahale v. City & County of Honolulu,* 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (quoting *SCI Mgmt. Corp. v. Sims,* 101 Hawai'i 438, 445, 71 P.3d 389, 396 (2003) (quoting *Coon v. City &*

7. Willis presumably refers to Act 14 (2001), which made more specific HRS § 431:10C–408(a)(1)'s precondition for JUP benefits: "No *liability or [UM ]* insurance benefits . . . are applicable to the accidental harm" (new language underscored). *See supra* note 2.

8. The circuit court's July 24, 2003 judgment further disposed of "[a]ll other claims, including [First Insurance's] cross claim against [Swain]" and Willis's claims against Swain, none of which is germane to this appeal.

*County of Honolulu,* 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002)))))).

## III. *DISCUSSION*

### A. *The Parties' Arguments*

■ On appeal, Willis contends that there was no other BI insurance for her to turn to and that the legislature intended for her to be covered. (Quoting HRS §§ 431:10C–102, –103.5, and –408, *see supra* note 2; *Allstate Ins. Co. v. Kaneshiro,* 93 Hawai'i 210, 998 P.2d 490 (2000); *Estate of Doe v. Paul Revere Ins. Co.,* 86 Hawai'i 262, 273, 948 P.2d 1103, 1114 (1997); *Neumann v. Ramil,* 6 Haw.App. 377, 380, 722 P.2d 1048, 1051 (1986); *Washington v. Fireman's Fund Ins. Cos.,* 68 Haw. 192, 201, 708 P.2d 129, 135 (1985); *Barcena v. Hawaiian Ins. & Guar. Co.,* 67 Haw. 97, 101, 678 P.2d 1082, 1085 (1984).) (Citing HRS § 431:10C–407; *Dawes v. First Ins. Co.,* 77 Hawai'i 117, 121, 883 P.2d 38, 42 (1994).) (Some citations omitted.)

First Insurance counters that Willis did not qualify for assigned claims coverage "because she was the named insured under her own Certificate Policy with First Insurance and therefore had identifiable motor vehicle insurance coverage on the date of the subject accident." (Quoting *Neumann,* 6 Haw.App. at 383–85, 722 P.2d at 1053–54; HRS § 431:10C–407(b)(3).) (Citing HRS § 431:10C–408(b).) First Insurance essentially argues that certificate policies are not required to include UM coverage to comply with 431:10C–301(b)(4) and Willis, by disregarding First Insurance's "offer" of supplemental UM coverage, forewent her eligibility for assigned benefits. (Quoting HRS § 431:10C–407(b)(3).) First Insurance's position is meritless.

### B. *Analysis*

#### 1. *The question on appeal*

The core issue as framed by the parties is whether an offer and a tacit refusal of UM coverage render the UM coverage "applicable" and "identifi[able]" so as to relieve the assignee insurer under HRS § 431:10C–408, *see supra* note 2, of the duty to compensate the injured claimant. To address this particular query would require us to construe the terms "applicable" and "identifi[able]." In that regard, we do not believe that the law of this jurisdiction or any other jurisdiction or the Uniform Motor Vehicle Accident Reparations Act (UMVARA)[9] or its commentary, § 18(a)(1), (3) & cmt., 14 U.L.A. 82 (2005 & Supp.2006), are illuminating. Fortunately, we need not engage in an exercise in statutory interpretation because an issue of fact is outcome-dispositive. Underlying First Insurance's argument are two questionable premises: (1) that First Insurance indeed made an effective offer of UM coverage; and (2) that such coverage would have "appli[ed]" to Willis's status as a passenger in a car that was not her own. We conclude that First Insurance did not, as a matter of law, "offer" Willis "applicable" UM coverage.

#### 2. *First Insurance did not make a legal offer of UM coverage.*

We agree with First Insurance that it was not required to furnish UM coverage as an element of Willis's certificate policy. HRS § 431:10C–407(b)(3), *see supra* note 2, provides, in general, that "the required motor vehicle policy coverages as provided in [HRS § ] 431:10C–301 shall be offered by every insurer to each eligible applicant assigned by the [JUPB]." However, UM coverage is excluded from this provision when the insured is a member of the "class defined in [HRS § 431:10C–407(b) ](2)(A)," *i.e.,* a public assistance recipient. In fact, HAR § 16–23–73(a), *see supra* note 3, literally *prohibits* the servicing carrier from including UM coverage with a certificate policy. Except "[f]or named insureds who prior to January 1, 1998, elected to purchase [UM] and/or [UIM] coverages," an unadorned certificate policy incorporates PIP and liability alone. *Id.* Un-

---

9. In 1971 and 1972, the National Conference of Commissioners on Uniform State Laws, under contract with the United States Department of Transportation, drafted and promulgated the UMVARA as "a complete and comprehensive system of providing reparations for injuries and losses arising from motor vehicle accidents," "with the hope that uniformity would eventually be obtained among all the states." 14 U.L.A. 35 (2005 & Supp.2006); M. King Hill, Jr., *The Uniform Motor Vehicle Accident Reparations Act,* 8 Forum 1, 2–4 (1972–73). While no jurisdiction has "adopt[ed] the [UMVARA] as such," the District of Columbia and eighteen states other than Hawai'i "have adopted some form of 'No Fault' legislation." 14 U.L.A., *supra,* at 40–41.

less and until the insured can afford to and wishes to augment her certificate policy by buying UM coverage with her own funds, she carries no UM insurance.

Nevertheless, First Insurance contends that it "offered" Willis supplemental UM coverage, thereby creating an alternative to, hence disqualifying, Willis's assigned claim. We disagree. The sum total of the evidence that First Insurance offered UM coverage to Willis is the statement, set forth in Willis's certificate of eligibility, that "[i]f you desire ... [UM] ... coverage[ ] ..., contact an insurance agent to assist you in obtaining these coverages upon payment of the appropriate premium." This is at most an invitation to initiate negotiation, not an offer.

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that [the person's] assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981 & Supp.2006). While particular words and formalities are not required, *Wong Kwai v. Dominis*, 13 Haw. 471, 476 (1901), the communication must be sufficiently definite to manifest the maker's intent to bestow upon the addressee the power of acceptance, *see, e.g.*, Restatement, *supra*, § 24 reporter's note cmt. a; 1 Richard A. Lord, *Williston on Contracts* § 4.7 (4th ed. 1990 & Supp.2006).

As a matter of law, the certificate's "general expression of willingness to bargain [did] not constitute an offer." *See* Lord, *supra*,

**10.** HRS ch. 431, art. 10C, pt. IV.C (1993 & Supp.1998) (recodified in 2005), *amended by* 2006 Haw. Sess. L. Act 289, §§ 5 and 7 at 1172–73, provides for the insurance commissioner to standardize rates for JUP policies but does not necessarily prohibit individual insurers from offering lower rates than those set by the commissioner.

**11.** For further discussion of what is too uncertain to qualify as an offer, see Restatement, *supra*, § 33 ("Certainty"), which provides:

(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

§ 4.7. At most, First Insurance flagged for Willis the fact that no statute or regulation bestowed a UM component on her certificate policy and directed her to an unspecified "insurance agent" to learn about the requisite premiums and procedures. No reasonable reading of the statement could elucidate (1) *which* insurer(s) might underwrite Willis's UM coverage or (2) the premiums [10] or any other terms. *Compare, e.g., Zanakis–Pico v. Cutter Dodge, Inc.*, 98 Hawai'i 309, 324 & n. 26, 325–26, 47 P.3d 1222, 1237 & n. 26, 1238–39 (2002); *Honolulu Rapid Transit Co. v. Paschoal*, 51 Haw. 19, 23, 449 P.2d 123, 125–26 (1968), *with, e.g., Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 56 Haw. 466, 468, 540 P.2d 978, 981 (1975).[11]

3. *The circuit court erred in granting summary judgment.*

First Insurance having made no offer of UM coverage in the first place, *a fortiori*, we cannot say that First Insurance has demonstrated an "applicable" and "identifi[able]" alternative to Willis's assigned claim. It follows inexorably that First Insurance was not "entitled to judgment as a matter of law" on its March 31, 2003 motion.

4. *Placing financial responsibility on insurers, for the narrow category of accidents within the assigned claims mechanism, comports with public policy.*

Finally, First Insurance makes the following public policy argument:

(3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.

Restatement, *supra*, § 26 cmt. d ("Invitation of ... offers"), supplies the following illustration: *A writes B, "I am eager to sell my house. I would consider $20,000 for it."* B promptly answers, "I will buy your house for $20,000 cash." There is no contract. *A's letter is a request or suggestion that an offer be made to him.* B has made an offer.

(Emphases added.) *See also id.* § 33 cmt. c ("Incompleteness of terms is one of the principal reasons why advertisements and price quotations are ordinarily not interpreted as offers."). In the present matter, First Insurance's purported "offer" patently contravened the certainty requirement; it was even more precatory than A's suggestion that s/he "would consider $20,000."

[I]f [Willis] had been injured by a[ UM] while operating her own vehicle, there is absolutely no question that she would not be entitled to Assigned Claims [BI] coverage and that her sole recovery, if any, would be based on whether or not she had [UM] coverage under her own Certificate Policy with First Insurance. *Why should [Willis] be treated any differently ... due to the fortuitous circumstance of having been injured while she was a passenger in another person's vehicle?* Stated differently, why should [Willis] be relieved of the consequences of choosing not to purchase [UM] coverage simply because she was riding as a passenger in someone else's vehicle at the time she sustained injury?

. . . .

... *[T]he interpretation of [HRS § 431:10C–408, see supra note 2,] argued for by [Willis] ... would serve to create universal [UM] coverage for anyone injured in a motor vehicle accident.* If Assigned Claims coverage was truly meant to apply to *anyone* for whom there is no [UM] coverage, then the Assigned Claims Program would make basic [UM] coverage ... completely unnecessary and superfluous. There would be no point in paying a premium for [UM] coverage if all one had to do was apply to the [JUPB] and request that [one's BI] claim be assigned to a participating insurance carrier ... at no cost.

(Some emphases added and some in original.) (Citing *Bowers v. Alamo Rent–A–Car, Inc.,* 88 Hawai'i 274, 965 P.2d 1274 (1998).)

First Insurance distorts Willis's characterization of the assigned claims program by implying that it would "create universal [UM] coverage for *anyone* injured in a motor vehicle accident" (emphasis added). First Insurance overlooks HRS § 431:10C–408(b), which "disqualifie[s]," for example, a claimant who actually owns or is the registrant of one of the motor vehicles "(2) ... (A) ... involve[d] in the accident." In other words, UM coverage, far from "superfluous," protects car owners while driving or riding in their own vehicles and, hence, is far broader than the assigned claim system, which ap-

plies only in "residual situations," *see* UM-VARA § 19 cmt., 14 U.L.A. 85 (2005 & Supp. 2006).

The absurd consequence of First Insurance's proposition would be that insurers, merely by offering, could compel even people who *do not own cars* to purchase "passenger UM insurance" and "pedestrian UM insurance" to hedge against the risk of injury by an impecunious and uninsured or underinsured driver or in a hit-and-run collision. Even one who *does* happen to own a motor vehicle but never drives it (such as a parent of a teenage driver) could be hamstrung by an insurer's mere offer into paying a monthly premium to avoid a financial catastrophe from an injury outside the confines of the car.

In short, Willis *should* "be treated ... differently," as the legislature made clear by excluding from assigned coverage (1) "[t]he owner or registrant" of an "involve[d]" vehicle and (2) the *knowing* passenger of an uninsured vehicle but not (3) the injured passenger of a vehicle that later turns out to be uninsured.

## IV. CONCLUSION

In light of the foregoing analysis, we hold that the circuit court erred in awarding summary judgment in favor of First Insurance and against Willis. Accordingly, we vacate the circuit court's July 24, 2003 judgment insofar as it dismissed Willis's action against First Insurance and remand for further proceedings consistent with this opinion. On remand, to the extent that the trier of fact finds that Willis's post-July 2, 1999 medical expenses remain unpaid and her assigned claim complies with the Motor Vehicle Insurance Law in other respects, the circuit court shall order First Insurance to tender the appropriate benefits under the assigned claims program.