165 P.3d 247

Lorin SILVA and Carol Silva, individually and as personal representative of the Estate of Kevin Silva, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF HONOLULU, Defendant–Appellee,

and

John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, and Doe Governmental Agencies 1–10, Defendants.

No. 27385.

Supreme Court of Hawaiʻi.

Aug. 10, 2007.

Dennis W. Potts, Honolulu, and Todd W. Eddins, on the briefs, for the plaintiffs-appellants Lorin and Carol Silva.

Moana A. Yost, Deputy Corporation, counsel (DCC), for the defendant-appellee City and County of Honolulu.

James Krueger, Haiku, for the amicus curiae Consumer Lawyers of Hawai'i.

Jane E. Lovell, DCC, for the amicus curiae County of Maui.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and Circuit Judge CHANG, in place of ACOBA, J., Recused.

Opinion of the Court by LEVINSON, J.

The plaintiffs-appellants Lorin and Carol Silva [hereinafter, collectively, "the Plaintiffs"] appeal from the first circuit court's June 14, 2005 judgment, the Honorable Randal K.O. Lee presiding, in favor of the defendant-appellee City and County of Honolulu [hereinafter, "the County"] and against the Plaintiffs, effectively dismissing their complaint.

On appeal to this court, the Plaintiffs contend that: (1) Hawai'i Revised Statutes

(HRS) § 663–3(b) (Supp.1997)[1] is the controlling statute of limitations in wrongful death actions against the County, not HRS § 46–72 (Supp.1998);[2] (2) in any case, the "Plaintiffs substantially complied with the provisions of HRS § 46–72"; (3) the notice period "should have been tolled until ... a personal representative was appointed to represent ... [the Plaintiffs' decedent son Kevin's] estate" [hereinafter, "the estate"]; and (4) "[t]he application of HRS § 46–72 to the instant case ... violates the Equal Protection Clauses of ... the Hawai'i Constitution and the ... United States Constitution."

We conclude that the Plaintiffs' first three points are meritless, but on the basis of their fourth point, as discussed *infra* in section III.D, we vacate the circuit court's judgment and remand for further proceedings.

## I. *BACKGROUND*

In this appeal, we consider whether the notice-of-claim requirement set forth in HRS § 46–72, *supra* note 2, as applied to the circumstances of this case, operates as a legal bar to the County's liability for Kevin's death.

On September 7, 2004, Carol filed a petition in the circuit court sitting in probate, the Honorable Colleen K. Hirai presiding, for adjudication of intestacy and appointment of a personal representative for the estate.

Effective upon its January 21, 2005 order, the probate court granted Carol's petition and appointed her the estate's personal representative. On February 22, 2005, Lorin (individually) and Carol (individually and as the estate's personal representative) filed a complaint in the circuit court, the Honorable Randal K.O. Lee presiding, against, *inter alia*, the County for damages arising out of Kevin's death.

The Plaintiffs alleged that, on July 4, 2004, Honolulu Police Department (HPD) officers, "acting within the course and scope of their employment by" the County, arrested Kevin in the vicinity of Kpapa Neighborhood Park. The Plaintiffs further alleged the following facts: (1) that Kevin "sustained severe and life threatening physical injuries as a result of the conduct of one or more of the [HPD] officers who arrested him" and that "the police knew or should have known that he needed immediate medical attention"; (2) that Kevin, however, "was not provided with any medical treatment" until "his physical condition deteriorated further"; (3) that Kevin died the same day at Wahiaw General Hospital as a result of the injuries inflicted by the HPD officers and by unnamed Doe defendants and the officers' failure to provide Kevin with timely medical care; (4) that, on July 6 and 7, 2004, at least three articles in Honolulu newspapers discussed the incident

---

1. HRS § 663–3, entitled "Death by wrongful act," provides in relevant part:

 (a) When the death of a person is caused by the wrongful act, neglect, or default of any person, the deceased's legal representative, or any of the persons enumerated in subsection (b), may maintain an action against the person causing the death or against the person responsible for the death. The action shall be maintained on behalf of the persons enumerated in subsection (b), except that the legal representative may recover on behalf of the estate the reasonable expenses of the deceased's last illness and burial.

 (b) In any action under this section, such damages may be given as under the circumstances shall be deemed fair and just compensation, with reference to the pecuniary injury and loss of love and affection, ... by the surviving ... father[ and] mother.... Any action brought under this section shall be commenced within two years from the date of death of the injured person, except as otherwise provided.

2. HRS § 46–72 (Supp.1998), entitled "Liability for damages; notice of injuries," provided in pertinent part:

 Before the [sic] county shall be liable for damages to any person for injuries to person or property received upon any of the ... public places of the county, or on account of any negligence of any official or employee of the county, the person so injured, ... or someone in the person's behalf, shall, within *six months after the injuries are received*, give the chairperson of the council of the county or the city clerk of Honolulu notice in writing of the injuries and the specific damages resulting, stating fully in the notice when, where, and how the injuries occurred, the extent thereof, and the amount claimed therefor.

 (Emphasis added.) Effective June 7, 2007, the legislature amended this section, in respects germane to this appeal, such that the emphasized language now reads: "two years after the injuries accrued". *See* Act 152, 24th Leg., Reg. Sess., §§ 8, 14 (2007).

and Carol's consequent grief; (5) that, on August 17, 2004, the Plaintiffs' attorney, Dennis W. Potts, wrote two letters to HPD Detective Sheryl Sunia, which stated in relevant part:

RE: My Client: Kevin Silva
Date of Death: July 4, 2004

....

We [ (the Plaintiffs' counsel) ] are writing this letter ... due to our understanding that you are conducting an internal investigation at HPD into the circumstances surrounding the death of Kevin ... on July 4, 2004 in Wahiaw[ ].... [W]e have been retained by [Kevin]'s family to conduct an investigation into the circumstances surrounding his death. As part of this investigation we do intend ... to review and/or listen to the HPD dispatch tapes relating to [Kevin]'s arrest, detention and ultimate death.

We are therefore writing this letter to request that these dispatch tapes *not* be destroyed or discarded and that they be held intact until ... our review of these tapes.

....

RE: My Client: Kevin Silva
Date of Death: July 4, 2004

....

... [T]he request made in my prior letter encompasses not only the dispatch tapes, but any and all communications, dispatch logs or printouts relating thereto ...

(emphases in original); (6) that, on August 25, 2004, Potts wrote a letter to the County's then-corporation counsel, David Z. Arakawa, which read in relevant part:

RE: *Kevin Silva; Date of Death: July 4, 2004*

....

... [W]e are investigating the circumstances surrounding the death of Kevin ... in police custody ... on July 4, 2004. We ha[ve] previously written to ... Detective ... Sunia, who is apparently conducting an internal investigation into the circumstances surrounding [Kevin]'s death, requesting that all HPD dispatch tapes, and any and all communications, dispatch logs or printouts relating thereto be pre-

served pending the completion of our investigation.

We are enclosing herewith the two letters that I sent to Detective Sunia in this regard.

... We are ... making the same request of your office that we made of HPD....

(emphasis in original); (7) that, on April 13, 2005, Potts sent a letter to the County's Department of the Corporation Counsel concerning Kevin's death and describing itself as a "notice of claim" within the meaning of HRS § 46–72, *Kahale v. City & County of Honolulu*, 104 Hawai'i 341, 90 P.3d 233 (2004), and *Salavea v. City & County of Honolulu*, 55 Haw. 216, 517 P.2d 51 (1973). Citing the Plaintiffs' complaint and his letters to Detective Sunia and Arakawa, supposedly attached, Potts asserted that

the attached documents provide you with all of the available information regarding [Kevin]'s death and the claims of [the e]state against the ... County ... which we have at the present time.... [T]he [e]state ... is at this time seeking ... $500,000.00 as ... damages resulting from his death at Wahiaw[ ] General Hospital on July 4, 2004. [Kevin]'s death appears to have been caused by injuries that he received at K[ ]papa [Neighborhood] Park ... as the result of an altercation with persons using that park as well as injuries that he received subsequent to his arrest caused by employees of [HPD]. These injuries included traumatic injuries to his head and body ... caused by the manner in which he was restrained.... In addition, [the e]state is claiming that [Kevin] was not provided with timely medical care by employees of [HPD] once it became known or should have become known to them that he had sustained life threatening injuries....

On March 22, 2005, the County filed a motion to dismiss the Plaintiffs' complaint on the ground, *inter alia,* that the Plaintiffs had not complied with HRS § 46–72. (Citing *Kahale,* 104 Hawai'i at 343, 90 P.3d at 235; *Albert v. Dietz,* 283 F.Supp. 854 (D.Haw. 1968); *Oakley v. State,* 54 Haw. 210, 220, 505 P.2d 1182, 1187 (1973) (Abe, J., concurring).)

On April 25, 2005, the Plaintiffs filed a memorandum in opposition to the County's motion, which advanced several alternative arguments: (1) that (a) their letters to Detective Sunia and Arakawa, their ostensible "notice of claim," "the highly publicized nature of [the] case," and/or HPD's Internal Affairs investigation complied with the notice requirement in and of themselves or (b) HRS § 46–72 should be liberally construed to recognize that the County was adequately " 'protect[ed] . . . against fraud arising out of stale claims' " (emphasis omitted) (citing *Cochran v. Pflueger Autos., Inc.*, 72 Haw. 460, 821 P.2d 934 (1991); *Levi v. Univ. of Hawaii*, 67 Haw. 90, 679 P.2d 129 (1984); *Shibuya v. Architects Hawaii Ltd.*, 65 Haw. 26, 647 P.2d 276 (1982)); (2) that HRS § 46–72 was tolled pending appointment of a personal representative; (3) that HRS § 663–3(b), *see supra* note 1, which sets forth a two-year limitation period, is the controlling statute and that HRS § 46–72, which only concerns "injury" cases, is of no consequence to the present wrongful death matter (quoting *Kahale*, 104 Hawai'i at 346, 90 P.3d at 238); and (4) that HRS § 46–72, as applied to the Plaintiffs, contravenes the equal protection clauses of the United States and Hawai'i constitutions insofar as "no rational basis exists for the disparate treatment of claimants when a case of wrongful death involving the [County, as opposed to the state,] arises" (quoting *Kahale*, 104 Hawai'i at 353–54, 90 P.3d at 245–46 (Acoba, J., concurring and dissenting)).[3]

During a hearing conducted on May 4, 2005, the circuit court reasoned in relevant part as follows:

> *Kahale* . . . overruled *Salavea* . . . and held that HRS § 46–72 provides the statute of limitations that governs tort claims against the counties. . . . The real question in this case is whether or not notice was actually given to the [County] within . . . six[ ]month[s]. . . . In *Oakley* . . ., the Supreme Court indicated that ["]the basic purpose of the statutory requirement of filing a written notice o[f] claim [ . . . ] is to inform the municipal authorities [']when,

where, and how the injuries occurred[. . . .' " 54 Haw. at 216, 505 P.2d at 1186]. The purpose is ["]to guard the [counties] against fraudulent and unfounded claims and["] provide the[m] an opportunity to ["]investigat[e,] while the facts are fresh and . . . conditions remain substantially the same[. . . . T]he test to determine . . . sufficiency of compliance . . . is whether . . . the municipal officials [have been misled] to their prejudice[,] under all the circumstances of the case[. . . ." *Id.* at 216–17, 505 P.2d at 1186].

> *Oakley*, which requires a broad reading of the notice requirement, refers to *Sayre v. El Dorado County High Sch*[.] *Dist.*, [97 Cal.App.2d 333,] 217 P.2d 713 (Cal. App. . . . 1950). [54 Haw. at 218, 505 P.2d at 1187.] In *Sayre*, a student was injured in a bus collision, and guardians of that student filed a claim with the school district, rather than the municipality. With a broad reading of the notice requirement, *Sayre* [held] that the notice filed with the school district was sufficient [to put the municipality on notice of the tort claim]. In both *Oakley* and *Sayre*, claims were filed.

> In this particular case, [a] claim[ ] w[as] not filed with the [C]ounty within six months [after] . . . the date of the alleged injuries. . . .

> . . . In *Hagy* [*v. State*, 137 Idaho 618, 51 P.3d 432 (Idaho Ct.App.2002) ], a wrongful death c[ase], the plaintiffs alleged that the State . . . breached its duty to the decedent because [it] failed to involuntarily commit the decedent to a mental health institut[ion]. . . . [A] letter was written to the State asserting that the decedent had died and request[ing] an investigation into the circumstances. . . . [The court] held that the passing reference to the decedent was insufficient to put the State on notice. . . .

> This Court views this case [as] similar to *Hagy* in that the issue is whether or not the letter to . . . Arakawa was sufficient

---

3. *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."); Haw. Const. art. I, § 5 ("No person shall . . . be denied the equal protection of the laws. . . .").

notice. The . . . letter . . . to . . . Arakawa [wa]s written with the intent of placing [him] on notice that there should be an investigation surrounding the circumstances of [Kevin]'s death. This letter . . . was insufficient . . . to place [the County] on notice that a claim was going to be filed against it.

Furthermore, the circuit court summarily rejected the Plaintiffs' equal protection and tolling arguments. Accordingly, the circuit court granted the County's motion to dismiss and, on June 14, 2005, entered final judgment in favor of the County and against the Plaintiffs. On July 5, 2005, the Plaintiffs filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

### A. Summary Judgment [4]

■ We review the circuit court's grant or denial of summary judgment *de novo.* *Hawai'i C[m]ty[.] Fed[.] Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Willis v. Swain,* 112 Hawai'i 184, 188, 145 P.3d 727, 731 (2006) (brackets in original)

(quoting *Querubin v. Thronas,* 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting *Durette v. Aloha Plastic Recycling, Inc.,* 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004) (quoting *Simmons v. Puu,* 105 Hawai'i 112, 117–18, 94 P.3d 667, 672–73 (2004) (quoting *Kahale,* 104 Hawai'i at 344, 90 P.3d at 236 (quoting *SCI Mgmt. Corp. v. Sims,* 101 Hawai'i 438, 445, 71 P.3d 389, 396 (2003) (quoting *Coon v. City & County of Honolulu,* 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002)))))))).

### B. Statutory Interpretation

■ ["]The interpretation of a statute is a question of law reviewable *de novo.*["] *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)[ (internal quotation signals omitted) ].

Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

> *Gray* [*v. Admin. Dir. of the Court* ], 84 Hawai'i [138,] 148, 931 P.2d [580,] 590 [ (1997) ] (quoting *State v. Toyomura,* 80

---

4. "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . ." Hawai'i Rules of Civil Procedure Rule 12(b).

Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2).... "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Koch,* 107 Hawai'i 215, 220, 112 P.3d 69, 74 (2005) [ (some brackets added and some in original) (one ellipsis added and some in original) ] (quoting *State v. Kaua,* 102 Hawai'i 1, 7–8, 72 P.3d 473, 479–480 (2003)). Absent an absurd or unjust result, *see State v. Haugen,* 104 Hawai'i 71, 77, 85 P.3d 178, 184 (2004), this court is bound to give effect to the plain meaning of unambiguous statutory language; we may only resort to the use of legislative history when interpreting an ambiguous statute. *State v. Valdivia,* 95 Hawai'i 465, 472, 24 P.3d 661, 668 (2001).

*Hawaii Home Infusion Assocs. v. Befitel,* 114 Hawai'i 87, 91, 157 P.3d 526, 530 (2007) (quoting *Courbat v. Dahana Ranch, Inc.,* 111 Hawai'i 254, 260–61, 141 P.3d 427, 433–34 (2006)) (brackets and ellipses in original).

C. *Questions Of Constitutional Law*

 "We answer questions of constitutional law 'by exercising our own independent ... judgment based on the facts of the case.' Thus, we review questions of constitutional law [']under the [ ]right/wrong[ ] standard.' " *Arceo,* 84 Hawai'i at 11, 928 P.2d at 853 (quoting *State v. Lee,* 83 Hawai'i 267, 273, 925 P.2d 1091, 1097 (1996); *State v. Trainor,* 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996); *Toyomura,* 80 Hawai'i at 15, 904 P.2d at 900; *State v. Baranco,* 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994)).

III. *DISCUSSION*

On appeal, as in the circuit court, the Plaintiffs argue: (1) that HRS § 663–3(b), *see supra* note 1, is the controlling statute of limitations in wrongful death actions against the County, not HRS § 46–72, *see supra* note 2; (2) that, in any case, the "Plaintiffs substantially complied with the provisions of HRS § [ ]46–72"; (3) that the notice period "should have been tolled until ... a personal representative was appointed to represent ... [Kevin's] estate"; and (4) that "[t]he application of HRS § 46–72 to the instant case ... violates the Equal Protection Clauses of ... the Hawai'i Constitution and the ... United States Constitution," *see supra* note 3.

A. *HRS § 46–72, The Statute Of Limitations Applicable To Suits Against A County For Injuries, Applies With Equal Force To Claims Arising Out Of Injuries Resulting In Death.*

 The Plaintiffs seem to reason that, inasmuch as HRS § 663–3 applies more "specifically" to wrongful death actions, HRS § 46–72's notice requirement is applicable only to cases involving "injuries" shy of death.[5] (Citing *Crawford v. Crawford,* 69 Haw. 410, 415, 745 P.2d 285, 288 (1987).) Furthermore, they urge that, even if we were to determine that HRS § 46–72 applied to their claims, that statute must yield to the longer limitation period set forth in HRS § 663–3(b). (Citing *Crawford,* 69 Haw. at 415, 745 P.2d at 287.)

The County counters: (a) that an "injury" is simply " '1. [t]he violation of another's legal right ... [,] a wrong or injustice' ", or " '2. [h]arm or damage' "; whereas (b) "a death is the result of injuries sustained"; "even HRS § 663–3(b)[ ], the statute that [the] Plaintiffs would like this ... Court to apply to their claims, concerns the 'death of the *injured*

5. Consumer Lawyers of Hawai'i emphatically concurs in its *amicus* brief. (Citing *Crawford v. Crawford,* 69 Haw. 410, 745 P.2d 285 (1987).) The "opposing" *amicus curiae,* the County of Maui, counters that "[t]here are numerous instances in which the Legislature has recognized that a wrongful death action involves an 'injured person.' " (Quoting HRS §§ 633–3 (Supp.1997) (mentioning the "date of death of the injured person"), 663–7 (1993) (mentioning the "death of the injured person").)

person[ ]' (emphasis added)." (Citation omitted.)

Consumer Lawyers of Hawai'i, as *amicus curiae*, adds:

The . . . legislature has not blended personal injury claims and death claims . . . so that a single period of limitation governs each. . . .

Claims for wrongful death are governed solely by H.R.S. [§ ]663–3. . . .

. . . .

It must be presumed that the legislature, in enacting H.R.S. [§ ]657–7,[6] for personal injury claims, and [HRS § ]663–3[ ] for death claims, was aware of the serious : . . . differences between . . . injury suffered by a living person versus death. . . .

. . . .

. . . [I]f the legislature had wanted H.R.S. [§ ]46–72 to apply to death claims, . . . it could have said so.

(Some emphases omitted and some in original.)

We hold, following *Kahale,* that the statute of limitations applicable to the estate's claims arising out of Kevin's injuries and the Plaintiffs' own derivative wrongful death damages, is HRS § 46–72. *See Kahale,* 104 Hawai'i at 343, 345, 347 & n. 7, 90 P.3d at 235, 237, 239 & n. 7. We ascribe no significance to HRS § 46–72's general reference to "injuries" as compared to HRS § 663–3's uses of the term "death." The Plaintiffs' first amended complaint alleged that their damages sprang from the physical harm allegedly visited upon Kevin in the hours before his death and, to a substantial degree, from the trauma that Kevin experienced while still alive:

11. . . . [Kevin] sustained severe and life threatening *physical injuries* as a result of the conduct of one or more of the police officers who arrested him.

12. . . . [HPD] knew or should have known that [Kevin] needed immediate medical attention for the *physical injuries* . . . .

. . . .

18. Those police officers who were involved in the arrest, transportation and incarceration of [Kevin] . . . inflicted *physical injury* on [him], [as a] *direct and proximate result* of which he . . . ultimately died.

. . . .

20. As a *direct and proximate result of the conduct of the Defendants* . . ., [the e]state sustained special damages by way of *medical,* funeral and burial expenses and loss of excess earnings as well as general damages for the *conscious pain, suffering and emotional distress* which [Kevin] experienced *prior to his death* while [Lorin and Carol] sustained damages by way of loss of financial support, maintenance and other, miscellaneous costs and expenses, the loss of filial love, affection, care, support and counsel, emotional distress and the disruption of their home and family life. . . .

(Emphases added.) The fortuity of Kevin's death should not allow the Plaintiffs to evade the statute of limitations applicable to "injuries."

Moreover, we reject the Plaintiffs' argument that decedents' estates, *per se,* enjoy the longer limitation period of two years because of the logistical difficulties inherent in the appointment of a personal representative. The Plaintiffs' intimation that the legislature intended to create an additional eighteen-month allowance for lengthy probate proceedings is purely conjectural; the Plaintiffs do not, and we believe could not, point to any authority in support of their suggestion.

In any case, the statute of limitations that the Plaintiffs offer as the correct one is facially inapposite to the estate's claims (with a minor exception). Wrongful death claims, the sole subject of HRS § 663–3, are derivative claims for the exclusive benefit of a "surviving spouse, reciprocal beneficiary, children, father, mother, [or] . . . any person wholly or partly dependent upon the de-

---

6. HRS § 657–7 (1993) might be called the "general" personal injury statute of limitations. It provides that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657–13" (concerning tolling during infancy, imprisonment, or insanity).

ceased person," not primary claims of the decedent's estate except with regard to "reasonable expenses of last illness and burial." In any event, by its plain language, HRS § 663-3 yields to a more restrictive provision: "Any action brought under this section shall be commenced within two years from the date of death of the injured person, *except as otherwise provided*" (emphasis added).

For the foregoing reasons, HRS § 46-72 applies to claims against counties arising from fatal injuries—holding aside for now the Plaintiffs' constitutional argument. *But see infra* section III.D.

B. *HRS § 46-72 Is Not Tolled During The Period Before A Plaintiff Estate's Personal Representative Is Appointed.*

■ The Plaintiffs argue that the six-month notice period "should have been tolled until such time as a personal representative was appointed to represent . . . Kevin['s] . . . estate."[7] They urge a liberal construction of HRS § 46-72: "Justice [Bernard H.] Levinson was clearly aware of the difficulties that would ensue if the limitations period were not tolled pending the appointment of a guardian ad litem for a minor. Without . . . a personal representative, there would likewise be needless confusion and unnecessary litigation with respect to who is legally authorized to act on behalf of the decedent." (Citing *Salavea,* 55 Haw. at 223–25, 517 P.2d at 56–57 (Levinson, J., dissenting).) The Plaintiffs' argument is meritless.

There appears to be a long-standing consensus among foreign jurisdictions that, in the absence of a specific enactment to the contrary, the applicable limitation period is not tolled, nor is its onset postponed, by delays in the appointment of a personal representative. *See* J.N.P., Annotation, *Delay in Procuring Appointment of Personal Representative of Deceased or of Person Causing His Death in Event of Latter's Death, as Extending Period for Bringing an Action for Death,* 70 A.L.R. 472, 472–74 (1931 & Supp. 2007); *Riley v. S. Transp. Co.,* 90 F.Supp. 842, 844 (S.D.N.Y.1950), *dismissed as to other grounds, aff'd,* 192 F.2d 391 (2d Cir.1951); *Foote v. Pub. Hous. Comm'r,* 107 F.Supp. 270, 274–76 (W.D.Mich.1952); *Straub v. Jaeger,* 9 F.R.D. 672, 675 (E.D.Pa.1950); *Williams v. Quebec S.S. Co.,* 126 F. 591, 592 (S.D.N.Y.1903) ("The language of the Act is explicit: 'Such an action must be commenced within two years after the decedent's death,' and, in view of the plain language, the time to commence an action can not be extended by construction."); *Radezky v. Sargent & Co.,* 77 Conn. 110, 58 A. 709, 710 (1904) ("The language of the statute [8] is clear and explicit, containing no exception and suggesting no qualification. Neither the failure of the . . . beneficiaries . . . to secure the appointment of an administrator, nor the failure of an administrator to commence an action, affect the time limit fixed by statute."); *Miller v. United Techs. Corp.,* 40 Conn.Supp. 451, 515 A.2d 386, 389 (1986) (where wrongful death statute of limitations barred actions "brought" more than "two years [after] date of injury or discovery of injury," *see* Conn. Gen.Stat. Ann. § 52-555(a) & historical notes (Lexis 2007), holding that, "[w]here the permanent administrator is appointed after the running of the [wrongful-death] statute of limitations . . ., the action is barred by said statute of limitations"), *rev'd in part on other grounds,* 233 Conn. 732, 660 A.2d 810, 837

---

7. Neither party discusses the possibility that any claim against the County did not *accrue* until Carol was appointed. In any case, this court has implied, in Hawai'i Probate Rules (HPR) Rule 56, that the applicable statute of limitations can begin to run against the estate notwithstanding its lack of representation: "An interested person may seek appointment of a special administrator where necessary to preserve the estate or to secure its proper administration, including but not limited to situations where: . . . (c) for some reason, a probate cannot be opened rapidly enough to allow the commencement of a lawsuit before the running of the statute of limitations. . . ." *See also* HPR Rule 56(c) cmt. ("If . . . the nominated personal representative is not a close family member, informal probate may take too long if the statute of limitations on the claim is about to expire. . . ."); HRS § 560:3-614 (Supp.1996) ("Special administrator; appointment").

8. The Connecticut statute read in relevant part: "'[N]o action shall be brought upon this [section concerning death caused by the negligence of another] but within one year after the neglect complained of.'" *See Radezky,* 58 A. at 709.

(1995); *Hanna v. Jeffersonville R.R. Co.*, 32 Ind. 113, 113–14 (1869) ("[I]t does not appear possible ... that the legislature meant that [the two years begin to run upon] the appointment of the administrator.... [B]y delay to procure the appointment of an administrator, the suit might ... be delayed for any length of time."); *Van Vactor's Adm'x v. Louisville & N. R.R. Co.*, 112 Ky. 445, 66 S.W. 4, 4–5 (1902); *Carden v. L. & N. R.R.*, 101 Ky. 113, 39 S.W. 1027, 1028 (1897); *Cashman v. Hedberg*, 215 Minn. 463, 10 N.W.2d 388, 391–92 (1943) (quoting *Rugland v. Anderson*, 30 Minn. 386, 15 N.W. 676, 676 (1883) (The action "must 'be commenced within two years after the act or omission by which the death was caused.' To this limitation the statute makes no exception, and none can be made by construction.")); *Davis v. State*, 22 A.D.2d 733, 253 N.Y.S.2d 267, 268 (1964) (where statute "provide[d] that '[i]n any event [a] claim shall be filed within two years after the death of the decedent,'" effectively dismissing complaint on grounds of untimely notice of claim, despite acknowledging that estate had no recoverable claim until appointment of representative) (emphasis omitted); *Davis v. Schactmeistner*, 112 N.Y.S.2d 208, 208–09 (Sup.Ct.1952); *Cohen v. Steigman*, 249 A.D. 819, 292 N.Y.S. 750, 751 (1937); *Best v. Town of Kinston*, 106 N.C. 205, 10 S.E. 997, 997–98 (1890); *Eldridge v. Eastmoreland Gen. Hosp.*, 307 Or. 500, 769 P.2d 775, 778 (1989) ("[T]he appointment of the personal representative is not relevant to the determination whether the limitations period established by [the controlling Oregon statute] has expired."); *Mann v. Dep't of Transp.*, 114 Or.App. 562, 836 P.2d 1353, 1355 n. 2 (1992), *adhered to, abrogated on different grounds after remand*, 122 Or.App. 628, 856 P.2d 1055, 1055 (1993); *Mier's Adm'r v. Boyer*, 124 Vt. 12, 196 A.2d 501, 502–03 (1963); *Dodson v. Cont'l Can Co.*, 159 Wash. 589, 294 P. 265, 266–67 (1930) (following analogous interpretation of Federal Employers' Liability Act by *Reading Co. v. Koons*, 271 U.S. 58, 59–65, 46 S.Ct. 405, 70 L.Ed. 835 (1926)); *George v. Chi., Milw. & St. Paul Ry. Co.*, 51 Wis. 603, 8 N.W. 374, 374 (1881) (while acknowledging that action could have been brought no earlier than representative's appointment, applying "absolute and unconditional" language of statute to bar action); *cf. Safir v. Compagnie Generale Transatlantique*, 241 F.Supp. 501, 505 (E.D.N.Y.1965) (resting analysis on express statutory exception delaying limitation period until appointment of administrator); *Smith v. Deller*, 161 Ga.App. 112, 288 S.E.2d 825, 826–27 (1982) (same); *Mehrer v. N. Ninth Lumber Co.*, 275 A.D. 1059, 92 N.Y.S.2d 178, 179 (1949) (mem.) (same); *Gibson v. Meehan*, 13 Misc.2d 716, 178 N.Y.S.2d 674, 675 (Sup. Ct.1958) (same); *Carpenter v. Johnson*, 514 S.W.2d 868, 869–70 (Tenn.1974) (same).

In the case of HRS § 46–72, the legislature obviously recognized that, where the injured person has died, the act of supplying notice must be performed by "someone in the person's behalf," *see supra* note 2, and yet, in the same penstroke, the legislature set the limitation period at six months from the *injury*, not from the appointment of a personal representative or special administrator and without reference to a delayed "accrual." Accordingly, and in view of (1) the overwhelming foreign case law in support of a literal construction of "six months after the injuries are received," HRS § 46–72 (Supp. 1998), and (2) the availability of special administration as an expedient mechanism by which to preserve an estate's claims, *see* HRS §§ 560:3–614 to –617 (Supp.1996); Hawai'i Probate Rule 56 & cmt., we hold that the limitation period set forth in HRS § 46–72 is not tolled pending the appointment of a personal representative.

C. *The Plaintiffs' Complaint Was Untimely.*

Inasmuch as the Plaintiffs did not file their complaint within six months of Kevin's injuries, it was categorically untimely and, accordingly, we need not address the questions of the effectiveness of the Plaintiffs' letters as notices of claim or whether the County essentially "notified itself" of the Plaintiffs' claims as circumstantially reflected in the HPD investigation.

As we observed in *Salavea* and reiterated in *Kahale*, while the notice requirement set forth in HRS § 46–72 may appear to be a mere "condition precedent to liability," it "operates, in reality, as a statute of

limitations." *Salavea*, 55 Haw. at 218, 517 P.2d at 53; *see also Kahale*, 104 Hawai'i at 343, 345, 347 & n. 7, 90 P.3d at 235, 237, 239 & n. 7. Furthermore, the legislature recently affirmed HRS § 46–72's character as a statute of limitations by enacting Act 152, 24th Leg., Reg. Sess. (2007), the preambles of which describe HRS § 46–72 as "the *statute of limitations* for claims for damage and injury against the counties." *See* Act 152 §§ 1, 7, 8, and 14 (emphasis added). That being the case, the Plaintiffs did not comply with HRS § 46–72 (holding aside their equal protection argument, *see infra* section III.D), inasmuch as they filed their initial complaint on February 22, 2005, more than seven months after Kevin's alleged July 4, 2004 injuries. *Cf. Kahale*, 104 Hawai'i at 349, 90 P.3d at 241 ("Rachael, as Brandzie's next friend, having filed claims for relief on Brandzie's behalf while she was still a minor, ensured that HRS § 46–72 would not act as a bar to those claims against the [County].").

D. *Inasmuch As The Prior Version Of HRS § 46–72 Distinguished Counties' Tort Victims From The State's Tort Victims Without A Rational Basis, It Contravened Article I, Section 5 Of The Hawai'i Constitution.*

Finally, given our disposition of the Plaintiffs' first three points of error, it becomes necessary to reach their equal protection [9] argument, on which basis we vacate and remand.

1. *The Plaintiffs' Arguments*

■ The Plaintiffs contend that HRS § 46–72 creates a class of tort claimants, to wit, those injured by the conduct of a county, who are subject to disparate treatment vis-à-vis victims of injuries caused by the state [10] without a rational basis to support such a distinction.[11] (Quoting *Felder v. Casey*, 487 U.S. 131, 145–46, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Turner v. Staggs*, 89 Nev. 230, 510 P.2d 879, 882–83 (1973); *Jenkins v. State*, 85 Wash.2d 883, 540 P.2d 1363, 1367–68 (1975).) (Citing *Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Crandall v. City of Birmingham*, 442 So.2d 77, 78–79 (Ala.1983); *Gleason v. Davenport*, 275 N.W.2d 431, 436 (Iowa 1979); *Reich v. State*, 386 Mich. 617, 194 N.W.2d 700, 702 (1972); *Glassman v. Miller*, 356 N.W.2d 655, 656 (Minn.1984).) In substance, the Plaintiffs argue that, whereas tort claimants against private parties or the state derive the benefit of a two-year limitation period, they and other plaintiffs allegedly injured by a county are subject to a more restrictive six-month limitation for which no rational basis exists.[12] We agree.[13]

9. We confine our interpretation to Hawaii's equal protection clause, *see supra* note 3, inasmuch as we need not comment on its federal counterpart.

10. *See* HRS § 662–4 (1993) ("A tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues, except in the case of a medical tort claim . . . .")

11. The Plaintiffs concede that neither fundamental rights nor suspect classifications are at issue. *Accord Kahale*, 104 Hawai'i at 353, 90 P.3d at 245 (Acoba, J., concurring and dissenting). *But see Shoemaker v. Aldmor Mgmt., Inc.*, 249 Ga. 430, 291 S.E.2d 549, 551 n. 1 (1982) (Hill, P.J., dissenting) ("This assumes that the right to recover compensatory damages from a negligent tortfeasor is not a 'fundamental right.' "); *Lunday v. Vogelmann*, 213 N.W.2d 904, 908 (Iowa 1973) (Reynoldson, J., dissenting) ("It would plainly impinge on basic rights to deny reasonable opportunity for redress in court to one who through the wrongful act of another has been permanently disabled, with a consequent inability to enjoy life and to follow a gainful occupation in order to acquire and possess property.").

12. The Plaintiffs cite the charters of Maui and Hawai'i Counties, ostensibly to show that claims against those counties have a two-year shelf life as opposed to the six months mandated by HRS § 46–72 (Supp.1998). (The County of Maui's charter was amended in 2006, but this is not pertinent here.) We disagree with the Plaintiffs' implication that county charters supplant state statutes. *See* Haw. Const. art. VIII; §§ 1–2, 6; HRS § 50–15 (1993). In any case, the only challenged classification to which the Plaintiffs belong is that of claimants against the City and County of Honolulu.

13. We should note, in response to the County's understandable supposition that, "if [we] believed HRS § 46–72 to be unconstitutional," we would have adopted Justice Acoba's position in *Kahale*, 104 Hawai'i at 353–54, 90 P.3d at 245–46 (Acoba, J., concurring and dissenting), that the *Kahale* plaintiffs did not advance a constitutional argument.

## 2. Analysis

Our case law construing Hawaii's equal protection clause is heretofore silent as to the particular nuance before us. Justice Bernard H. Levinson postulated that "the purpose of protecting the public fisc from fraudulent claims justifies the imposition on victims of *governmental* torts a more onerous requirement of prompt notice of claims than on victims of *private* torts," *Salavea,* 55 Haw. at 223 n. 3, 517 P.2d at 56 n. 3 (Levinson, J., concurring and dissenting) (emphases added), but we are not willing simply to transform this explanation of the separate classification of government and private tortfeasors' victims into a rational basis for the distinction between county and state defendants; we have no reason to believe that the counties endure greater budgetary strain or more fraudulent claims than the state.

Among the few authorities on point, *Farnum v. G.D. Searle & Co.,* 339 N.W.2d 392 (Iowa 1983), advances the most detailed justification of a county/state distinction, but we believe it to be distinguishable. In *Farnum,* the plaintiffs "contend[ed] there is no rational basis for having a more stringent limitations period for actions against county doctors than for actions against state doctors." *Id.* at 396. The Iowa Supreme Court disagreed:

> Despite home rule, counties operate under greater fiscal constraints than the state does. Their main source of revenue is the property tax. The property tax levy is subject to a statutory ceiling. Strict time lines are established in the Local Budget Law.... In contrast, the [Iowa] General Assembly is free to raise revenue from a number of sources, and its procedure ... enables it to appropriate funds as necessary, after the fact, to pay claims.
>
> This court has previously noted the special problems encountered by Iowa municipalities in formulating and implementing budgets. Budgetary considerations were noted in *Lunday [v. Vogelmann,* 213 N.W.2d 904 (Iowa 1973), *overruled by Miller v. Boone County Hosp.,* 394 N.W.2d

776, 781 (1986),] as supporting the notice requirement.... *See [id.]* at 907–08. Other courts have also given weight to this factor in upholding similar notice requirements.

> The same reasoning led the New Mexico Supreme Court to uphold differential treatment of victims and tortfeasors in analogous facts in *Espanola Hous[.] Auth[.] v. Atencio,* ... [90 N.M.787,] 568 P.2d 1233 ([N.M.] 1977). The court said:

> > In this state, cities are clearly limited in their expenditures. The ability of cities to raise money to meet such extraordinary expense is also restricted.

> > Therefore, it appears that some rational basis does exist for limiting the time period in which a suit may be brought against a city....

> *Id.* ... at 1236. Other courts have reached the same conclusion. We find these cases persuasive authority for upholding the differential treatment in the present case.

*Farnum,* 339 N.W.2d at 397 (some citations omitted); *see also Segarra v. Chi. Transit Auth.,* 265 Ill.App.3d 480, 202 Ill.Dec. 33, 637 N.E.2d 572, 575 (1994) (where plaintiff challenged notice requirement for suits against the Chicago Transit Authority (CTA) that did not apply to suits against municipalities, upholding statute as consistent with equal protection, noting that the CTA, "having as its only purpose the operation of one of the largest mass transit systems in the United States[,] performs a ... governmental function with its own peculiar problems having no parallel in the usual functions of ... governmental entities," such as a "large number of personal injury claims") (internal quotation signals omitted).

Unlike *Segarra, Farnum,* and *Atencio,* the record before us is silent with respect to any difference between the levels of government in this state that would constitute a rational basis for a more stringent limitation period when the County is the defendant as compared to when the state is the defendant.[14]

---

14. The *Farnum* court relied upon Iowa statutes to illustrate differences between the sources of and procedures for allocating funds of the state versus the counties. *See* 339 N.W.2d at 397 (citing Iowa Code chaps. 24, 25A and

In fact, the legislature has expressly recognized that the disparity is at least unnecessary and at most unfair. Effective June 7, 2007, the legislature enacted Act 152, 24th Leg., Reg. Sess., § 8, which amended HRS § 46-72 so as to expand the limitation period to "two years after the injuries accrued." *See supra* note 2. Act 152's preamble states that "it is necessary to conform the statute of limitations ... against the counties with the limitations period applicable to the State and private individuals generally to ensure fair and consistent application of the law." *See* Act 152 § 1; *accord id.* § 7 (articulating "[t]he purpose of" the amendment); Sen. Stand. Comm. Rep. No. 276 at 2 (Feb. 14, 2007) ("This [amendment] will bring county claims in conformity with all other government and private sector claims and the reasonable expectations of the public."). Furthermore, while the County and the state's Department of the Attorney General opposed the amendment from its inception, when testifying against it, they failed to demonstrate how, if at all, the County's exposure to or procedure for handling tort claims is different from the state's so as to justify a disparate limitation period:

> The six-month requirement is a policy matter.... Because the Counties rely on public funds to operate, it is critical that the Counties have all possible avenues to protect their scarce resources....
>
> ... The majority of the claims received by the Counties are not the sensational matters about which the media reports; rather the majority of the claims are the more mundane types of matters that affect municipalities and counties and their citizens, [*e.g.*], pothole claims, damage to mailboxes from refuse trucks, sidewalk trip and falls, money lost in parking meters, tree branches dinging cars, vehicle damage from debris in the roadway, [and] injuries from divots in parks....

*See* Hearing on S.B. 1641,[15] Sen. Intergov'tal & Mil. Affairs Comm., 24th Leg., Reg. Sess. (Feb. 12, 2007) (statement of Corp. Counsel Carrie K.S. Okinaga) (on file with committee clerk); *id.* (statement of the Dep't of the Att'y Gen.). It just as easily could be said of the state that its "resources" are "scarce" and that it is regularly sued over "debris in the roadway," "damage ... from refuse trucks," and similar workaday perils.

Finally, the cases offered by the County in its answering brief concern only the government-versus-private tortfeasor distinction that we have already rejected as dissimilar to the classification scheme at work in HRS

§§ 331.422, .424 (current version available at http://www.legis.state.ia.us/iowalaw.html)).

Similarly, in *Atencio*, the New Mexico Supreme Court observed that, "[i]n [New Mexico], cities are clearly limited in their expenditures" and that "[t]he ability of cities to raise money to meet ... extraordinary expense is also restricted." 568 P.2d at 1236 (citing N.M. Stat. Ann. §§ 11-6-1 and -6 (1953 & Repl.1974)). Unlike the present matter, the defendant city had proffered some assertedly "rational" bases for enjoying a shorter statute of limitations: "3 .... cities are severely limited [in their ability] to raise funds; ... [and] 4 .... cities have a greater need to know what claims they may be faced with during a fiscal year because, potentially, they have ... greater ... liability." *See id.* at 1235-36.

While *Segarra* does not directly cite factual support for the CTA's unique stature, the court cited *Schuman v. CTA*, 407 Ill. 313, 95 N.E.2d 447 (1950), in which the Illinois Supreme Court "t[ook] judicial notice [ ] of the magnitude of the operations of [the CTA].... [O]perating ... on the busy streets and thoroughfares of the second largest city in the United States, one of the largest cities of the world, [it] becomes involved in

the largest volume of personal injuries litigation in the state. There are, no doubt, many, if not more, 'blind' claims—those not reported ... by its employees—than in any other municipality in Illinois." *Id.* at 451 (emphasis added).

We are unwilling to "find" or judicially notice that the County's budgetary fetters place it in a worse position than the state. To the contrary, the County's charter appears to sanction certain emergency appropriations, even if an unanticipated deficit results. *See* Revised Charter of Honolulu § 9-105.3 (2000) ("Appropriations ... not included in the ... budget ordinances may be ... enacted ...: (a) To meet contingencies which could not be anticipated when the budget ordinances were passed.... Unless paid for out of current revenues, all amounts appropriated under this subsection ... must be included as liabilities ... in the next succeeding ... budget ordinances.").

15. S.B. 1641, 24th Leg., Reg. Sess (2007) was an earlier incarnation of the amendment to HRS § 46-72; the Senate Judiciary and Labor Committee incorporated it into the bill that would become Act 152. *See* Sen. Stand. Comm. Rep. No. 979 at 2 (Mar. 2, 2007).

§ 46–72 (Supp.1998). *See Rios v. Montgomery County,* 386 Md. 104, 872 A.2d 1, 18–19 (2005); *Johnson v. Maryland State Police,* 331 Md. 285, 628 A.2d 162, 167 (1993); *Riccitelli v. Broekhuizen,* 227 Wis.2d 100, 595 N.W.2d 392, 401 (1999).[16]

### 3. *The Bottom Line*

We hold that there is no rational basis for the classification scheme effectuated by HRS § 46–72 as it read in 2004. The County offers no rationale for the distinction between the classes, nor can we deduce one. The record on appeal and the legislative history are silent with respect to any budgetary, logistical, or other difference between the County and the state that might justify the unequal treatment of victims of their torts.

We cure this constitutional error by severing HRS § 46–72's (since repealed) six-month provision, thereby relegating the Plaintiffs' claims to the same two-year limitation applicable to claims against private tortfeasors under HRS §§ 657–7, *see supra* note 6, and 663–3(b), *see supra* note 1. *See Kahale,*

104 Hawai'i at 348 n. 8, 90 P.3d at 240 n. 8 ("[T]he legislature is perfectly free to amend [HRS § 46–72] to provide, say, for a two-year limitations period or to repeal it altogether, in which case tort claims against the counties would be governed by HRS § 657–7."). Inasmuch as the Plaintiffs filed their complaint well within two years of Kevin's initial contact with HPD on July 4, 2004, *a fortiori* "within two years after the cause of action accrued," HRS § 657–7, they are entitled to pursue their claims.

## IV. *CONCLUSION*

In light of the foregoing analysis, we vacate the circuit court's judgment and remand the matter to the circuit court for further proceedings consistent with this opinion.

---

**16.** We respectfully decline to follow the contrary conclusion of *Shoemaker v. Aldmor Mgmt., Inc.,* 249 Ga. 430, 291 S.E.2d 549, 551 (1982) (upholding notice statute as not violative of equal protection). The Georgia Supreme Court plainly misread the limitation statute's distinction between the requirements of notice to municipalities and to counties, concluding simply that "sufficient differences exist between *governmental* and *private* tortfeasors to justify ... requiring that ... notice be given to one but not the other," *see id.* at 550 (emphases added). Presiding Justice Hill protested that "the different times for notice as between counties and cities ... do[ ] not bear a reasonable relationship to a legitimate governmental purpose," but his dissenting opinion prompted not a moment's reflection by the majority. *See id.* at 551–52 (Hill, P.J., dissenting).

Nor does *Crowder v. Salt Lake County,* 552 P.2d 646 (Utah 1976), disturb our analysis. In *Crowder,* the Utah Supreme Court upheld a statutory scheme under which three different notice

periods applied to the State of Utah (one year), a county (ninety days), and a city or town (six months). *Id.* at 646–48. The court reasoned:

While no precise formula has been enunciated, it is generally held that the legislature has a wide discretion in enacting laws which affect one group of citizens differently than other groups.... The legislature is presumed to have acted within their constitutional authority even though inequality results.... [W]hile ... it may have been preferable for the legislature to have specified a uniform period for all divisions and subdivisions of state government, ... the statute should not be stricken down merely because the legislature adopted three periods during which notices of claims must be filed.

*Id.* at 647 (footnote omitted). We generally agree with *Crowder's* intimation that a statute subject to only rational-basis scrutiny is presumptively valid for equal-protection purposes, but, as we noted *supra,* the Hawai'i legislature affirmatively acknowledged that parity among claims against the counties and the state "is necessary."